# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*,
### 2013 IL App (1st) 122446

---

| | |
|---|---|
| Appellate Court Caption | PATRICK J. HOWE, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-2446 |
| Filed | September 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the absence of a valid final action by defendant retirement board in compliance with the requirements of the Open Meetings Act, the trial court's judgment confirming the denial of plaintiff's application for duty disability benefits for the injury he suffered in his position as a fireman was reversed and the board's decision was vacated and the cause was remanded to the Board with directions that it render a final administrative decision according to the principles of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-16641; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Circuit court judgment reversed; Board decision vacated; cause remanded to the Board for further proceedings, with directions. |

Counsel on
Appeal

Sugarman & Horwitz, of Chicago (Stephen B. Horwitz, of counsel), for appellant.

Burke Burns & Pinelli, Ltd., of Chicago (Mary Patricia Burns and Vincent D. Pinelli, of counsel), for appellee.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    From the perspective of the parties, this administrative review case is about whether a Chicago fire department (CFD) employee should receive a disability pension. From our viewpoint, however, the disability issue must wait for another day, because the pension board made several procedural errors which rendered its decision invalid.

¶ 2    Defendant, the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (Board), voted on a motion to grant the application of plaintiff, Patrick J. Howe, for a duty disability benefit under section 6-151 of the Illinois Pension Code (Pension Code) (40 ILCS 5/6-151 (West 2010)). The motion failed, as five Board members voted "no" and only two members voted "yes." Thereafter, the Board never adopted, by majority affirmative vote, any motion whatsoever disposing of the application and approving a written decision as required by the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2010)). Nonetheless, the Board thereafter issued a written decision denying Howe his application for a duty disability benefit. The circuit court addressed the merits of the underlying claim and affirmed the Board's decision to deny benefits to Howe. Because we find the Board never validly took final action on the application, we vacate its decision and remand this cause with instructions for the Board to take valid final action by conducting a proper affirmative vote on a specific written decision.

¶ 3                                  BACKGROUND

¶ 4    Because we do not reach the merits of the case, we will only briefly summarize the facts. They are largely uncontested and are set forth in the administrative record. Howe became an employee of the City of Chicago (City) on June 16, 1977. In 1996, after a series of promotions, Howe accepted a CFD managerial position, commonly referred to as an "exempt rank" position. In the new role, Howe worked on personnel and employee relations matters in the department's administrative services division. Howe negotiated contracts, performed

grievance resolution, and developed department examinations. Eventually, he became deputy district chief of employee relations.

¶ 5        In 2002, the CFD assigned Howe to work at its headquarters located at 10 West 35th Street in Chicago. His regular working hours were from 8 a.m. to 4:30 p.m. As deputy district chief of employee relations, his duties did not include mitigating any emergency in the City nor commanding emergency incidents.

¶ 6        On February 25, 2002, Howe was serving his periodic turn as the CFD's designated media affairs officer. After leaving CFD headquarters at the end of his regular workday, Howe proceeded on his route home, driving his CFD-issued vehicle southbound on the Dan Ryan Expressway (Ryan). At approximately 5 p.m., a call came over the CFD radio in his vehicle announcing that a man had fallen from a platform onto the rail tracks at the train station located at 63rd Street and the Ryan.

¶ 7        Although Howe was not ordered by the CFD or the office of emergency management communication to go to the scene of the incident, Howe chose to self-dispatch and exited the Ryan at the off-ramp. According to Howe, he chose to respond because this type of an incident "always attract[s] media attention," and he thought it would be best to respond to the dispatch. He also chose to respond because he is a licensed paramedic and wanted "to see if [he] could help with this patient as well."

¶ 8        Howe grabbed a "quick response bag" (QRB) from the trunk of his vehicle, which was stocked with emergency supplies that a paramedic would carry as a first responder. He observed that the Chicago Transit Authority (CTA) attendant was on the rail tracks assisting the man who had fallen. Because the attendant was not nearby to open the ticket booth or unlock the turnstile, Howe decided to leap over the turnstile in the same manner a gymnast would leap over a vault. He pressed his hands down on either side of the turnstile and boosted his body weight up, throwing his legs up and over the turnstile. At that point, Howe felt a "pop" in his right shoulder with extreme pain. After the CTA incident was mitigated, Howe drove himself to Little Company of Mary Hospital rather than call an ambulance because he "knew there was no need for [him] to tie up an ambulance for an injured shoulder."

¶ 9        Howe returned to duty 8 to 10 days after sustaining the injury. He underwent physical therapy and received steroid injections. When his shoulder failed to respond to treatment, Howe underwent a magnetic resonance imaging (MRI) test, which revealed a torn rotator cuff. Howe underwent shoulder surgery to repair the injury. He returned to duty on October 31, 2002 and continued to work at the CFD for the next six years. His shoulder continued to bother him with increasing pain and weakness. He received injections for the pain.

¶ 10       In 2008, Howe underwent a second surgical procedure on his right shoulder. He returned to duty in March 2009, but continued to have shoulder pain. In 2010, his shoulder was operated on for the third time. According to Howe, the restrictions recommended by his physician prevented him from performing all the physical requirements of a paramedic. Howe testified that he could not return to work for the CFD unless he was able to perform all the physical duties of a paramedic.

¶ 11       On December 8, 2010, Howe signed a City "End of Employment Form," which is

completed only if an employee is leaving City service. The form indicated that February 28, 2010 was the last day Howe worked for the CFD. The form also indicated Howe's reason for leaving employment as "Applying for Pension Benefits."

¶ 12 Howe submitted his application for a duty disability benefit on December 15, 2010 and underwent further examinations. On March 16, 2011, the Board conducted a formal administrative hearing on his application for a duty disability benefit. At the hearing, medical records were introduced into evidence, and Howe and others testified regarding his work duties, physical condition, and medical history.

¶ 13 Immediately after the last witness's testimony concluded, the Board adopted a motion to recess into closed session.[1] Following a break of unspecified length, the Board reconvened. Board member Anthony Martin made a motion to *grant* Howe's application. The motion was seconded, but the motion *lost* on a 2 to 5 vote. Martin, the maker of the motion, voted "no" on his own motion. According to the transcript, immediately after the last member voted, the chairman announced: "Based on the Findings of Fact made by the Trustees, the Trustees have voted to deny you the benefit you have requested. You will be notified by mail of the Findings of Fact and the Board's decision."

¶ 14 The transcript indicates that no further proceedings were conducted on Howe's application on that date, and the Board advises us that the record is complete. The Board did not adopt, by majority *affirmative* vote, any motion disposing of the application. However, the Board issued a written decision, which is dated the same day as the hearing, March 16, 2011. The decision is signed only by the five Board members who voted against the motion to grant the application. The written decision finds that Howe "did not present sufficient evidence to meet his burden of proof to show that he was performing an act of duty as defined under section 6-110 of the Illinois Pension Code [(40 ILCS 5/6-110 (West 2010))] when he injured his right shoulder on February 25, 2002." The Board also found Howe failed "to prove that he was injured while on duty" and "meet his burden of proof to show that he is disabled as defined under section 6-112 of the Illinois Pension Code [(40 ILCS 5/6-112 (West 2010))]." The Board transmitted the decision to Howe on April 4, 2011, along with a cover letter stating that the Board had met on March 16, 2011. The Board's cover letter states that Howe would have 35 days from the date of mailing (April 4) to file a complaint for administrative review.

¶ 15 On May 6, 2011, Howe filed his complaint for administrative review in the circuit court. Howe argued that the Board's findings were against the manifest weight of the evidence and that the shoulder injury he sustained was incurred in and resulting from an act of duty, but did not raise any issues regarding the method by which the Board adopted its written

---

[1]The motion did not, as strictly required by section 2(a) of the Open Meetings Act (5 ILCS 120/2(a) (West 2010)), state the specific statutory exemption under which the Board could meet in closed session. Presumably, it was to deliberate on the evidence presented before a quasi-adjudicative body as permitted by section 2(c)(4) of the Open Meetings Act (5 ILCS 120/2(c)(4) (West 2010)). We do not find this apparent violation to be material, but point it out to illustrate another problem in the manner in which the Board conducted the hearing.

decision. Howe sought a reversal of the Board's determination. On July 31, 2012, the circuit court issued a detailed and thorough written opinion affirming the Board's decision on the merits. This timely appeal followed.

¶ 16    Upon review of the briefs, we asked the parties for supplemental memoranda addressing two questions: (1) whether the Board took valid final action on the application when it never adopted any motion on the application with a majority of "yes" votes; and (2) whether the Board's decision was invalid in light of *Lawrence v. Williams*, 2013 IL App (1st) 130757, ¶ 23, because it was never adopted by a public vote as required by the Open Meetings Act. Both the Board and Howe filed supplemental memoranda arguing that the Board validly conducted the proceedings below.

¶ 17                                    ANALYSIS

¶ 18    The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)) governs our review of the Board's decision. "The scope of our review extends to all questions of law and fact presented by the record." *Village of Broadview v. Illinois Labor Relations Board*, 402 Ill. App. 3d 503, 505 (2010) (citing 735 ILCS 5/3-110 (West 2008)).

¶ 19    It is elementary that the decision of an administrative agency must be in writing. Many deadlines and requirements in the Administrative Review Law are triggered by the service or issuance of a "copy" of the decision upon the parties. See, *e.g.*, 735 ILCS 5/3-103 (West 2010) ("a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail"). Additionally, the Board has imposed upon itself a requirement that its decisions be in writing. See Procedural Rules Established Pursuant to 40 ILCS 5/6-191 Governing Applications for and Administrative Hearings Upon Applications for Duty, Occupational Disease or Ordinary Disability Benefits, Rule 67 (Nov. 2009), www.fabf.org/PDF_Files/DisabilityProcedures.pdf (last visited Aug. 7, 2013) ("Final administrative decisions of the Board shall be in writing and shall be issued to the applicant within sixty (60) days from the last Hearing date of the Administrative Hearing.").

¶ 20    The Board's own cover letter told Howe that he had 35 days from April 4 to seek administrative review, which indicates that the Board itself intended that April 4, not March 16, was the date of its final order. See 735 ILCS 5/3-103 (West 2010) (providing that the effective date of an administrative order for appeal purposes is the date it was personally delivered or mailed). Nothing in the administrative record reveals that the Board ever met again to approve the written decision in open session.

¶ 21    Pertinent to our discussion here, section 6-178 of the Pension Code provides:

"A majority of the members shall constitute a quorum for the transaction of business at any meeting; provided, that no pension, annuity, *or* benefit shall be allowed or granted and no money shall be paid out of the fund unless ordered by the affirmative vote of a majority of the total membership of the board as shown by roll call entered upon the official record of proceedings of the meeting at which such action is taken." (Emphasis added.) 40 ILCS 5/6-178 (West 2010).

In other words, section 6-178 of the Pension Code specifically mandates an affirmative

majority vote by the total membership of the board in order to *grant* an applicant a duty disability benefit. We recognize the Board intended to deny Howe his application for a duty disability benefit, so one can argue that section 6-178's "affirmative vote" requirement did not apply. Even so, after the motion to grant the application failed, it would have been preferable to adopt a motion specifically denying the application, along with a written decision, by a majority "yes" vote.

¶ 22    Additionally, the Board chairman's comment that the oral vote "denied" Howe's benefits becomes particularly inscrutable. On March 16, the Board chairman stated that the trustees had "made" "Findings of Fact," even though the written findings could not have been written at that time because the last witness had just testified. More importantly to our procedural conundrum, the chairman also stated that the board had "denied" the application, even though the only action the Board took was to vote *against* a motion to grant the application.

¶ 23    In Howe's supplemental brief, he argues that neither he nor the Board "ha[s] ever suggested or concerned themselves with the possibility that any component of the hearing or decision making process failed to comply" with the Open Meetings Act. According to Howe, the Board went into closed session following the presentation of evidence, reconvened in open session, "and in the presence of plaintiff and counsel, the Board's Trustees were polled, and voted to deny plaintiff a duty disability benefit." Howe makes no mention of the fact that the Board never voted in open session *on its written decision* to deny him a duty disability benefit.

¶ 24    Similarly, the Board argues in its supplemental brief that the procedures it followed in processing Howe's administrative proceeding "were consistent with both Illinois law and accepted parliamentary practices for the conduct of fair and orderly administrative board hearings." The Board then continues:

> "The five (5) Board members who signed the decision on March 16, 2011, not April 4, 2011, effectively adopted the decision after voting to deny the motion that was made to grant Howe's application. Once it is understood that the Board's majority voted no and signed a written decision on March 16, 2011, there is no doubt that the Board reached a final decision on that day."

The Board thus clearly concedes that it never took an affirmative majority vote on its written decision to deny Howe his application for a duty disability benefit.

¶ 25    We particularly emphasize that the written decision must be prepared and provided to each board member at or before the time the Board votes to take final action on the application. The Board's only decision is the written version, since that is the decision setting forth its findings of fact, reasoning, and analysis that judges consider during the administrative review process.

¶ 26    In this case, the record belies the Board's claim that it ever conducted a majority vote by roll call to affirm its written decision. In light of the requirement of section 1 of the Open Meetings Act (5 ILCS 120/1 (West 2010)) that public bodies vote openly, the Board's argument that the signatures of Board members in its written decision denying Howe his application suffices hardly holds water. No public body in Illinois subject to the Open Meetings Act can take final action by merely circulating some document for signature and

not voting on it publicly. Imagine, for instance, the legal problems created if the Chicago city council "adopted" ordinances by publicly voting on a concept that had never been reduced to writing, directed a staff attorney to prepare it in a more detailed written form, circulated the written final version around city hall for signatures of a majority of the 50 aldermen, and then ordered the city clerk to publish it as if it were a valid legislative act.

¶ 27 Both the Board and Howe urge us to find the Board took valid final action. In particular, the Board's supplemental brief suggests that it was perfectly fine for it to handle Howe's application in the manner it did, because it could ignore the rest of the statutory requirements as long as it "prepare[d] and ma[de] available for public inspection a written decision setting forth its determinative reasoning." 5 ILCS 120/2(c)(4) (West 2010). The Board's brief also rather brazenly contends there is no requirement "that the meeting thereafter be opened-up [*sic*] for the purpose of polling the members of the administrative body to disclose their votes on the question." That interpretation bends the Open Meetings Act almost beyond recognition.

¶ 28 The quoted provision regarding public inspection sets forth an exception to an exception. It first creates an exception to the normal rule of openness by allowing quasi-adjudicative agencies which have held a formal evidentiary hearing to meet in closed session[2] only to deliberate on the evidence–not to issue decisions. Secondly, it allows the agency to do so only if it actually later issues a written decision explaining its reasoning. Nothing in the provision relied upon by the Board abrogates the strict requirement of the Open Meetings Act that it must take final action openly. See 5 ILCS 120/1 (West 2010) ("In order that the people shall be informed, the General Assembly finds and declares that it is the intent of this Act to ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly.").

¶ 29 As to the Board's other contention that the members need not publicly disclose their votes, we note that it has been long-established that secret ballots by public bodies violate the Open Meetings Act. *WSDR, Inc. v. Ogle County*, 100 Ill. App. 3d 1008, 1011 (1981). We do not know if any member of the public was able to view the signing of the decision at issue here, and we realize that the signatures on the order are publicly available, but we know that no one was able to hear the Board members, assembled as a meeting, vote on it. The Board's method of "voting" is just as "secret" as the balloting methodology invalidated in the *WSDR* case.

¶ 30 In addition, we specifically reject the Board's and Howe's contentions that Open Meetings Act violations are no longer at issue because the Act contains a 60-day limitation period which has long passed. The limitation period, set forth in section 3 applies only to new lawsuits specifically brought by persons seeking declaratory or injunctive relief against a public body for an Open Meetings Act violation.

¶ 31 In *Lawrence v. Williams*, 2013 IL App (1st) 130757, we considered an appeal from a

---

[2]Although the Board held a closed session to deliberate on the evidence, the Board clearly did not execute, adopt, or issue its written decision with the intricate formalities the Open Meetings Act requires to actually convene a "closed session." 5 ILCS 120/2(c)(4) (West 2010).

decision of a local electoral board. Although electoral board decisions are heard on "judicial review" (10 ILCS 5/10-10.1 (West 2010)) and not administrative review pursuant to section 3-101 of the Code of Civil Procedure (735 ILCS 5/3-101 *et seq.* (West 2010)), as are pension board decisions (40 ILCS 5/6-222 (West 2010)), the process is basically the same. In *Lawrence*, we determined that two members of the three-member electoral board violated the Act by drafting and circulating a decision for signature behind closed doors without ever voting on it in an open session. *Lawrence*, 2013 IL App (1st) 130757, ¶¶ 21, 23. We dismissed the *Lawrence* appeal for lack of jurisdiction, finding that the electoral board never issued a valid final order. *Id.* Admittedly, unlike here, the losing party before the *Lawrence* electoral board specifically raised the Open Meetings Act violation as a basis to invalidate the electoral board's adverse decision. Nonetheless, *Lawrence* strongly suggests that the public's interest in openness overrides the parties' interest in expediency.

¶ 32 We understand the concern expressed by both the Board and Howe that reversing, vacating, and remanding this appeal would unduly prolong the length of the appeal process. However, the rationale they proffer to justify the legality of the Board's proceedings creates too much tension with universally recognized principles of parliamentary procedure, the Pension Code, and the principles embodied in the Open Meetings Act. Accordingly, we cannot blindly gloss over the Board's error by granting an imprimatur to its decision. The Board never took valid final action under the Open Meetings Act and, thus, we reverse the circuit court's judgment confirming the decision of the Board and vacate the Board's decision to deny Howe his application for a duty disability benefit, with instructions to the Board to render a valid final action in this cause. See *Rock v. Thompson*, 85 Ill. 2d 410, 438 (1981) (Simon, J., concurring in the decision) ("[i]n other words, we told everybody to start over and do it right").

¶ 33 If, after the Board renders a valid final decision on the merits, the case reaches us again, any party may file a motion asking to adopt the briefs already on file in this case as their briefs in the subsequent appeal.

¶ 34                                    CONCLUSION

¶ 35 For the foregoing reasons, the order of the circuit court of Cook County is reversed, the decision by the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago is vacated, and this cause is remanded to the Board with instructions that it render a final administrative decision with the principles set forth herein.

¶ 36 Circuit court judgment reversed; Board decision vacated; cause remanded to the Board for further proceedings, with directions.