# Illinois Official Reports

## Appellate Court

***Baldermann v. Board of Trustees of the Police Pension Fund*,**
**2015 IL App (1st) 140482**

| | |
|---|---|
| Appellate Court Caption | TIMOTHY BALDERMANN and DENNIS KAPELINSKI, Plaintiffs-Appellants, v. THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF CHICAGO RIDGE, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0482 |
| Filed | February 4, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal by two former police officers from a trial court's order granting summary judgment to defendant Board of Trustees of the Police Pension Fund of the Village of Chicago Ridge and dismissing the officers' complaint for declaratory and injunctive relief based on the trial court's finding that the Board had not rendered a final administrative decision with respect to plaintiffs' pension applications and, therefore, had jurisdiction to convene a hearing to consider the salary attached to rank for purposes of pensions for both plaintiffs, and further, there was no need to address the applicability of section 3-144.2 of the Pension Code, which permits the recovery of overpayments due to beneficiaries for "fraud, misrepresentation or error." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-46795; the Hon. Rita P. Novak, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Ottosen Britz Kelly Cooper Gilbert & Dinolfo, Ltd., of Naperville (John H. Kelly and Ericka J. Thomas, of counsel), for appellants.

Puchalski Goodloe Marzullo, LLP, of Libertyville (Jeffrey A. Goodloe, of counsel), for appellee.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Timothy Baldermann and Dennis Kapelinski (collectively, plaintiffs), two former members of the Chicago Ridge police department, appeal an order of the circuit court of Cook County granting summary judgment to defendant, the Board of Trustees of the Police Pension Fund of the Village of Chicago Ridge (the Board), and dismissing plaintiffs' complaint for declaratory and injunctive relief. The trial court found that the Board had not rendered a final administrative decision regarding either plaintiff's pension application and, therefore, the Board had jurisdiction to convene a hearing to consider the salary attached to rank for pension purposes for both plaintiffs. We agree with the trial court and affirm.

¶ 2                                    BACKGROUND

¶ 3    The facts relevant to this appeal are largely undisputed. In February 2005, Timothy Baldermann, the village's chief of police, and Dennis Kapelinski, then deputy chief of police, entered into an administrative work agreement with the village. The work agreement contained the following "buyout" provision: "The Chief of Police/Deputy Chief of Police will receive a 20% raise in salary on their last day of employment."

¶ 4    Baldermann was injured in the line of duty in 2008 and on April 28, 2010, submitted an application to the Board requesting a line-of-duty disability pension. Pursuant to section 3-114.1 of the Illinois Pension Code (Pension Code or Code) (40 ILCS 5/3-114.1 (West 2010)), a police officer who sustains a disabling injury in the line of duty is entitled to a disability pension equal to 65% of the salary attached to the officer's rank at the date of suspension of duty or retirement.

¶ 5    The Board held a hearing on the application the same day it was submitted. The record does not reflect whether the meeting held on April 28 was a regular or special Board meeting or that Baldermann's application for a duty disability pension was on the agenda. The minutes of the meeting recite that other, largely ministerial matters were considered at the meeting, which lasted for slightly over an hour.

¶ 6    At the beginning of the hearing, the Board's president expressed reservations about conducting the hearing so quickly, stating that he was unaware that Baldermann intended to present his application that evening. The president further noted his understanding that the

Board usually took such applications under advisement, obtained medical reports and considered the application at a subsequent meeting and that he had not had an opportunity to review certain of the medical information submitted with the application. Kapelinski, one of the Board's trustees, advocated that the Board consider the application, and after a short discussion, Kapelinski moved to award Baldermann a duty disability pension. The Board voted 5 to 0 to approve the motion. No motion was made and no vote was taken to approve the amount of Baldermann's pension. Counsel for the Board, Mark Sterk, who was present at the meeting, indicated that he would prepare written findings and a decision for the Board and the meeting was adjourned.

¶ 7        At some point after the hearing (the date is not reflected in the record) a written "Finding and Decision" was circulated and signed by each Board trustee. The written decision, which bears a date of April 28, 2010, reflects that Baldermann is entitled to a duty disability pension, but does not include any determination regarding Baldermann's salary attached to rank for pension purposes or the total amount of the pension. The written decision also does not recite that a majority of the Board voted to approve the decision or that a copy of the decision was sent to Baldermann. Attached to the decision is a certificate of payment signed by Kapelinski that recites: "This is to certify that the Chicago Ridge Police Pension Fund awarded a line of duty disability pension to Timothy Baldermann *** effective April 28, 2010."

¶ 8        On April 28, 2010, the same day the Board met to consider Baldermann's application, Kapelinski, in his capacity as Board secretary, signed an "Acknowledgement of Benefits Granted by Police Pension Fund of Village of Chicago Ridge" listing Baldermann's monthly pension amount as $10,765.98 based on an annual salary of $198,756.48 (computed using the 20% "raise" Baldermann received on the date of his retirement). Kapelinski obtained the information regarding Baldermann's pension from Lois Hill, payroll clerk for the village. There is nothing in the record to indicate that the Board considered or voted to approve the figures included in the form. Kapelinski then forwarded the information to Lauerbach & Amen, the Board's accounting firm.

¶ 9        On April 29, Lauerbach & Amen sent Kapelinski a pension benefit worksheet "prepared using the information *provided by the pension fund*" for Baldermann. (Emphasis added.) The firm asked that Kapelinski sign the worksheet, which in the signature block bore the legend: "Reviewed and Approved by Pension Fund." The firm also advised Kapelinski that per the provisions of Public Act 95-950 (Pub. Act 95-950 (eff. Aug. 29, 2008)), which amended the Pension Code, in addition to a Board trustee, the village treasurer was required to sign the worksheet. The copy of the form in the record reflects that Kapelinski signed it on April 29.

¶ 10        On May 6, 2010, Kapelinski applied to the Board for a regular retirement pension effective May 29, 2010. Under the Pension Code, a police officer age 50 or over with 20 years of creditable service is entitled to a pension of 50% of the salary attached to the rank held by the officer on the last day of service, or for one year prior to the last day, whichever is greater. 40 ILCS 5/3-111(a) (West 2010). Although Baldermann had been awarded a duty disability pension on April 28, 2010, and filed an affidavit in the trial court stating that he was employed as the chief of police until April 28, 2010, Baldermann signed Kapelinski's application on May 6 as the chief of police and certified Kapelinski's creditable service. The same day Kapelinski's application was submitted, Thomas Herman, purportedly as the Board's

secretary,[1] signed a certification that Kapelinski's salary attached to rank for pension purposes was $188,468.02 (again reflecting the 20% raise). On May 10, 2010, Herman also signed a retirement benefit history spreadsheet for Kapelinski. The Board never voted to approve Kapelinski's application for a pension, his pensionable salary or the total amount of his pension.

¶ 11    On May 11, 2010, Kapelinski spoke to village treasurer Deborah Pyznarski and asked her to certify and "sign off" on both his and Baldermann's pension calculations. Pyznarski later reviewed the calculations and concluded that both were incorrect because they included the "buyouts" as salary attached to rank for pension purposes. On May 14, Pyznarski met with Kapelinski, the village clerk and the mayor and advised them of her belief. Pyznarski and Kapelinski argued during the meeting and Pyznarski claimed Kapelinski threatened her. She testified that she ultimately signed the calculations because she feared that her job, as well as that of her husband, a village police officer, was in jeopardy. Pyznarski never advised the Board or Lauerbach & Amen that she believed the calculations were incorrect.

¶ 12    Also on May 11, Scott Schall, a member of the village police department, sent a letter to Sterk objecting to the inclusion of the 20% raise in the calculation of Baldermann's and Kapelinski's pensions. Sterk sent a letter addressed to the Board on May 18 in which he stated his opinion that the buyout provisions of the work agreement constituted salary attached to rank for pension purposes and that those provisions were not in violation of the Pension Code. Specifically, Sterk expressed his understanding that the raises Baldermann and Kapelinski received in connection with their retirement were in exchange for their waiver of compensation for accrued vacation. The same day, the Illinois Department of Insurance provided an advisory opinion to village attorney Nick Cetwinski that the buyout provisions were not properly included in pensionable salary.

¶ 13    Following submission of the certifications signed by Kapelinski, Herman and Pyznarski to the Board's accountants, Baldermann and Kapelinski began receiving their respective pensions.

¶ 14    At a meeting on June 16, 2010, the Board reviewed the pension calculations for Baldermann and Kapelinski. The minutes of the meeting recite, "[i]nvestigation for further information continues." One month later, the Department of Insurance issued a second advisory opinion to Cetwinski that neither the 20% raise nor any payment for accrued vacation time could be included as salary for pension purposes.

¶ 15    Rules promulgated by the Department of Insurance and effective long before Baldermann's and Kapelinski's applications were submitted provide that "base pay" is the "basic salary attached to rank which is specified in the bargaining contract, municipal pay plan or any other document which establishes salary." 50 Ill. Adm. Code 4402.35(a) (1996). The regulations also provide that "accumulated unused time," defined as "[c]ompensation for unused accumulated vacation, sick, or personal time earned during employment, regardless of

---

[1]It is unclear from the record who actually held the position of Board secretary as Kapelinski signed as secretary on Baldermann's form on April 28, 2010, and Herman signed as secretary on Kapelinski's form less than two weeks later on May 10, 2010. We suspect the lack of clarity may be illustrative of the fact that, as acknowledged by plaintiffs' counsel in the trial court, "[t]his board of trustees did not follow any of its rules ever."

whether the compensation is received during employment or after termination," may not be used for purposes of calculating pension benefits. 50 Ill. Adm. Code 4402.40(a) (1996).

¶ 16    On October 21, 2010, the Board served Baldermann and Kapelinski with notice of a hearing scheduled for November 3 to "investigate *** and/or determine the final salary amounts for pension purposes." On October 28, 2010, plaintiffs filed their complaint for declaratory and injunctive relief seeking to prevent the Board from taking any action to alter the amount of their pensions.

¶ 17    The trial court initially granted plaintiffs' motion for a temporary restraining order. After discovery, the parties filed cross-motions for summary judgment. Plaintiffs contended that because the Board failed to pursue administrative review of the determinations of their pensions within 35 days after the final decision on the applications, the Board lost jurisdiction to convene a hearing to consider altering the amounts of plaintiffs' pensions. See 735 ILCS 5/3-103 (West 2010) (action to review final administrative decision must be commenced within 35 days from the date a copy of the decision is served on the affected party). The Board argued that it had jurisdiction to hold the hearing to consider the salary attached to rank for pension purposes for both plaintiffs because it had not yet rendered a final administrative decision on either application. Specifically, the Board contended that no order for payment was ever entered based on a majority vote by members of the Board, which determined the amount of pensionable salary for either Baldermann or Kapelinski.

¶ 18    The day before the hearing on the pending motions, this court issued its decision in *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 122446. At the outset of the hearing, the trial court advised the parties of the decision and allowed them the opportunity to submit supplemental briefs addressing its application to this case. Following those submissions and relying primarily on *Howe*, the trial court ruled in favor of the Board, finding that the Board had not rendered a final administrative decision in either case and, therefore, had jurisdiction to determine the appropriate amount of plaintiffs' pensions. Plaintiffs timely appealed.

¶ 19                        STANDARD OF REVIEW

¶ 20    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). When parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a question of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review an order granting summary judgment *de novo*. *Id.* ¶ 30; *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 21                              ANALYSIS

¶ 22    The Board was created pursuant to article 3 of the Pension Code (40 ILCS 5/3-128 (West 2010)) (which applies to police pension funds in municipalities with fewer than 500,000 inhabitants) and consists of five members: two appointed by the mayor of the village; two active participants in the fund elected by all active participants; and one elected by and from fund beneficiaries. Under the Pension Code, the Board is required to hold quarterly meetings in January, April, July and October. 40 ILCS 5/3-130 (West 2010). Among the powers and duties of the Board enumerated in the Code is the power "[t]o order the payment of pensions and

other benefits and to issue certificates signed by its president and secretary to the beneficiaries stating the amount and purpose of the payment." 40 ILCS 5/3-133 (West 2010). The Code further provides that "[a] resolution or order for the payment of money shall not be valid unless approved by a majority of the board members, and signed by the president and secretary of the board." 40 ILCS 5/3-134 (West 2010).

¶ 23    The Board has promulgated rules governing its conduct. As relevant to the issues presented by this appeal, those rules prescribe the manner in which decisions are rendered following hearings on pension applications:

> "Within [30] business days after the conclusion of the hearing, the Board shall issue a written decision which sets forth the issues in dispute, findings of fact upon the evidence and testimony presented, and the Board's conclusions and orders. The Board shall determine whether the evidence establishes that the person is entitled to pension benefits and if so, in what amount." Village of Chicago Ridge Police Pension Fund Rules/Regulations Manual § 407(a) (Apr. 1992).

The Board's rules further require that the Board's decision be sent to the applicant via certified mail. *Id.* § 407(b).

¶ 24    Because it is a "public body" within the meaning of the Open Meetings Act (the Act) (5 ILCS 120/1 *et seq.* (West 2010)), the Board is required to hold meetings that are open to the public. 5 ILCS 120/2(a) (West 2010). As applied to a five-member public body, a "meeting" under the Act is any gathering attended by a quorum of the members of the public body held for the purpose of discussing public business. 5 ILCS 120/1.02 (West 2010). The Act requires every public body to post an agenda for each regular meeting at the public body's principal office and at the meeting location at least 48 hours in advance of the meeting. 5 ILCS 120/2.02(a) (West 2010). The Act also provides that for a five-member public body, three members constitute a quorum and the affirmative vote of three members is necessary to adopt any motion, resolution, or ordinance, unless a greater number is otherwise required. *Id.* The Act further requires public bodies to keep written minutes of all meetings, which shall include, among other things, a record of all votes taken. 5 ILCS 120/2.06 (West 2010).

¶ 25    Final administrative decisions of the Board are subject to review under the Administrative Review Law. 735 ILCS 5/3-101 *et seq.* (West 2010). The Administrative Review Law defines an "administrative decision" as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceeding before the administrative agency." 735 ILCS 5/3-101 (West 2010). Review of final administrative decision must be sought "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2010).

¶ 26    With the framework of these intersecting statutes and rules in mind, we turn to a discussion of *Howe*, 2013 IL App (1st) 122446, and its impact on the issues presented in this appeal. *Howe* involved an application for a duty disability pension by Patrick Howe, a Chicago firefighter. The Firemen's Annuity and Benefit Fund of Chicago (board) (an eight-member board pursuant to section 6-174 of the Pension Code (40 ILCS 5/6-174 (West 2010))) conducted a formal administrative hearing on Howe's application during which medical records were introduced into evidence and Howe and others testified regarding his work duties, physical condition and medical history. The Pension Code requires that eight-member boards act, with respect to any motion to allow a pension, by the affirmative vote of a majority

- 6 -

of the total membership of the board. 40 ILCS 5/6-178 (West 2010). After the hearing concluded and the board conferred in closed session, a board member made a motion to grant Howe's application. The motion failed on a 2 to 5 vote. Howe was told that he would be notified by mail of the board's findings and decision. The board did not adopt by a majority affirmative vote any motion denying the application.

¶ 27    The board issued a written decision denying the application dated the same day as the hearing, although the cover letter accompanying the decision was dated nearly three weeks later. The decision was signed by the five board members who voted against Howe's application, but no meeting was held during which board members voted affirmatively either to deny Howe's application or adopt the written decision. The cover letter advised Howe that he had 35 days from the date of the letter to file a complaint for administrative review.

¶ 28    Howe sought review in the circuit court, arguing that the board's decision was against the manifest weight of the evidence. The circuit court affirmed the board's decision on the merits.

¶ 29    Though neither party raised the issue on appeal, this court requested supplemental briefing addressing: "(1) whether the [b]oard took valid final action on the application when it never adopted any motion on the application with a majority of 'yes' votes; and (2) whether the [b]oard's decision was invalid in light of *Lawrence v. Williams*, 2013 IL App (1st) 130757, ¶ 23, because it was never adopted by a public vote as required by the Open Meetings Act." *Howe*, 2013 IL App (1st) 122446, ¶ 16. Finding no valid final action by the board in addition to a violation of the Open Meetings Act, this court reversed the decision on the merits, vacated the board's decision and remanded with directions that the board enter a final administrative decision. *Id.* ¶ 32.

¶ 30    The finding that the board did not render a final administrative decision was prompted by a number of procedural irregularities in connection with the failed vote on the motion to grant Howe's application for a duty disability pension. First, although a majority of the board voted against the motion to *grant* Howe's application, there was not an *affirmative* vote by a majority of the board as required by the Pension Code to *deny* the application. Thus, although the board chairman stated following the failed vote to grant the application that the board had "denied" it, that statement was inconsistent with the only vote taken, *i.e.*, the motion to grant the application failed to garner a majority vote. *Id.* ¶ 22. Second, the board chairman also recited that the board had made "findings" even though the decision containing the board's findings "could not have been written at that time because the last witness had just testified." *Id.* Finally, the board did not affirmatively vote to adopt the written decision; it was merely circulated to and signed by those trustees who had voted against granting Howe's application. *Id.* ¶ 26.

¶ 31    Noting that it is "elementary" that a final decision of an administrative agency must be in writing (*id.* ¶ 19), *Howe* further emphasized that "the written decision must be prepared and provided to each board member at or before the time the [b]oard votes to take final action on the application." *Id.* ¶ 25. This is because "[t]he [b]oard's only decision is the written version, since that is the decision setting forth its findings of fact, reasoning, and analysis that judges consider during the administrative review process." *Id.*

¶ 32    In addition to the procedural irregularities precluding a finding that the board had rendered a final administrative decision, *Howe* also considered whether the board's decision was invalid because the manner in which it was adopted violated the Open Meetings Act. *Howe* concluded that the Act imposes a "strict requirement" that a public body must take final action openly,

- 7 -

including voting publicly on any final decision. *Id.* ¶ 28. Although the board had voted publicly on the motion to approve Howe's application, no public vote was taken to approve the written decision denying the application and the court characterized the practice of circulating the decision for trustees' signatures as "secret" balloting. *Id.* ¶ 29. Citing *Lawrence v. Williams*, 2013 IL App (1st) 130757, ¶¶ 21, 23, in which a similar practice of drafting and circulating a decision for signature following a hearing was determined to violate the Open Meetings Act and failed to constitute a valid final order, this court found that even in light of the failure of any party to raise a claimed violation of the Act, "the public's interest in openness overrides the parties' interest in expediency." *Howe*, 2013 IL App (1st) 122446, ¶ 31.

¶ 33    We adhere to the reasoning of *Howe* and find that the Board's actions here failed to constitute valid final decisions on either Baldermann's or Kapelinski's application. Because the Board has not issued final administrative decisions, the trial court correctly found that the Board had jurisdiction to consider the amount of plaintiffs' pensionable salary in a later hearing.

¶ 34    It is apparent that there was no Board action whatsoever with respect to Kapelinski's application. As far as the record reflects, the application was never considered at a Board meeting and a majority of the Board never voted to grant the application or set the amount of Kapelinski's pension. Although Kapelinski argued in the trial court and repeats here that his pension was approved during one of the Board's "regular" meetings, he provides no record citation supporting his assertion that there was a regularly scheduled or special meeting in May and the record contains no minutes from any such meeting. The fact that Kapelinski's pension application was based on longevity and there apparently were no disputes regarding his creditable service does not relieve the Board of its obligation to authorize payment by affirmative majority vote. See 40 ILCS 5/3-134 (West 2010). Various documents signed by Baldermann (whose authority to sign after he had retired on April 28 is unexplained) and a Board trustee do not, as a matter of law, constitute the required Board "order" to pay a pension. Further Kapelinski does not explain how the 35-day period to seek review under the Administrative Review Law would be triggered given the lack of any written findings or decision. In the absence of any Board action at all, it necessarily follows that there has been no final administrative decision and, therefore, the Board has jurisdiction to convene a hearing to determine the salary attached to rank for purposes of Kapelinski's pension.

¶ 35    Although Baldermann's application was considered at a Board meeting and it garnered a unanimous affirmative oral vote, other irregularities in the manner in which the application was handled likewise support the finding that the application has not been the subject of a valid final administrative decision. First, Baldermann does not explain how the Board's conduct in conducting a hearing on the application the same day it was submitted comports with the requirement of the Open Meetings Act that meeting agendas be posted at least 48 hours in advance of any meeting. See 5 ILCS 120/2.02(a) (West 2010). No member of the public would have known that the Board was meeting to consider Baldermann's application for a duty disability pension. And given the fact that shortly after the application was processed, a member of the village police force complained to the Board about the inclusion of the "raise" in Baldermann's pensionable salary, it is clear that some interested parties might have desired to be present at the meeting—the precise purpose underlying the Open Meetings Act. See 5 ILCS 120/1 (West 2010) ("It is the public policy of this State that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the

conduct of their business."). Indeed, everything about the manner in which Baldermann's application was handled—from the hearing held on the day it was filed, to the disregard of the Board president's expressed concerns about the expedited hearing and lack of an opportunity to review supporting materials, to the lack of any mention, much less determination, of the salary attached to rank for pension purposes—compels a finding that the Board failed to render any valid decision at all on April 28.

¶ 36    Second, even if we assume that the vote taken on April 28 to award Baldermann a duty disability pension was a valid determination that Baldermann sustained a duty-related disabling injury, it is undisputed that the Board never voted to approve the amount of Baldermann's pension. The Board's written decision finds only that Baldermann became disabled as a result of an injury sustained in the line of duty; it says nothing about the amount of his duty disability pension or the rate of pay attached to rank used to calculate the pension. The failure of the Board to approve the amount of Baldermann's pension violates both the provisions of the Pension Code (40 ILCS 5/3-134 (West 2010)) as well as the Board's own rules, both of which require the Board to determine the amount of any applicant's pension benefits. A form signed by one Board trustee and the village treasurer does not constitute a "determination" by the Board of the amount of Baldermann's pension. For the same reason, the Board's failure to take a vote on the amount of Baldermann's pension at any meeting violates the Open Meetings Act (5 ILCS 120/1.02 (West 2010)).

¶ 37    Third, the Board's conduct in circulating a written decision for signature after the hearing runs afoul of the Open Meetings Act. As we emphasized in *Howe*, the written decision of a public body must be prepared and provided to each board member in advance of a board vote finally disposing of the matter under consideration. *Howe*, 2013 IL App (1st) 122446, ¶ 25. This comports with the requirement of a public vote under the Open Meetings Act. See 5 ILCS 120/1.02 (West 2010). "No public body in Illinois subject to the Open Meetings Act can take final action by merely circulating some document for signature and not voting on it publicly." *Howe*, 2013 IL App (1st) 122446, ¶ 26. Here, if the signatures of the Board trustees on the written decision were meant to signify their adoption of the decision's findings, that "vote" was just as "secret" as the vote that prompted this court in *Lawrence* to find the lack of any valid final order. See *Lawrence*, 2013 IL App (1st) 130757, ¶¶ 21, 23.

¶ 38    Finally, as in the case of Kapelinski's application, it is impossible to determine when the 35-day review period would begin to run. Although the written decision is dated April 28, 2010, the same day as the hearing on Baldermann's application, it is obvious that it was not prepared in advance of the April 28 meeting and was circulated and signed at some later date. No cover letter to Baldermann accompanies the written decision advising him of its effective date for purposes of seeking review under the Administrative Review Law. The lack of any identifiable date triggering the right to seek administrative review weighs in favor of the conclusion that the Board did not render a final decision.

¶ 39    Any one of the foregoing irregularities would support the determination that the Board here failed to render a valid final decision on Baldermann's application. But taken together, they render that result inevitable.

¶ 40    Plaintiffs' effort to distinguish *Howe* fails. Plaintiffs first seek to distinguish the case on the ground that the applicant in *Howe* timely sought administrative review and thus this court was not called upon to determine whether the board had jurisdiction to revisit the amount of Howe's pension. This, of course, begs the question. As we have noted, without a final

administrative decision, the time limits under the Administrative Review Law do not come into play so the distinction between consideration of the issue in the context of a petition for administrative review or, as here, a complaint for declaratory judgment, is meaningless.

¶ 41 Plaintiffs next raise the specter of pension applicants being forever subject to changes in their pension benefits as a result of a board failing to follow applicable statutes and its own rules. Without addressing the possibility that equitable considerations might preclude a board from taking advantage of its own failure to abide by the rules in an appropriate case (see *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 232 (2003) (finding board that had paid police officer's widow annual cost of living increases—to which she was not entitled—for eight years before seeking to discontinue those payments lacked jurisdiction to reduce payments)) suffice to say those circumstances are not present here. Equity does not favor either plaintiff. Baldermann, assisted by Kapelinski, prevailed upon the Board to hear his application the same day it was submitted, despite the Board president's reservations about the expedited procedure and the lack of an adequate opportunity to review the materials. For his part, Kapelinski, a fiduciary in his capacity as a trustee (and sometimes Board secretary), was charged with the knowledge that the Board failed to cast *any* vote with respect to his pension application and thus his claimed reliance on any action by the Board is manifestly unreasonable. As noted above, since at least 1996, the Department of Insurance had codified its position that "base pay" (for purposes of calculating pensions) is the basic salary attached to rank specified in the bargaining contract, municipal pay plan or other document establishing salary. The work agreement, providing for a 20% "raise" for the police chief and deputy police chief on the date of retirement, does not fall into any of the foregoing categories. Thus, plaintiffs could not have reasonably believed that the work agreement could be used to calculate their pensionable salary.

¶ 42 Furthermore, although not referenced by the parties, we note that the record contains the results of an audit of the pension fund conducted by the Department of Insurance in 2006 in which one of the issues addressed was salary increases granted to two former members of the police department in connection with their retirements. The Department of Insurance specifically found that these increases "should not be considered as salary for purposes of calculating pension benefits" and that their effect was to "artificially increase pension fund liabilities in an actuarially unsound manner." The Board, in a letter dated August 30, 2006, signed by, among others, Kapelinski, responded only that "[t]he increase in retirement benefits of [the two former members] are [*sic*] due to contractual agreements between the Village and the Officers Bargaining Unit." While this response does not address whether the Pension Code permits salary spikes to be included in salary attached to rank for pension purposes, it establishes beyond argument that Kapelinski was aware of the Department of Insurance's position long before he submitted his application for a pension. Thus, even if equitable considerations played a role here (which they do not given the lack of any valid final administrative decision), those factors would not produce a different result.

¶ 43 Plaintiffs persist in arguing on appeal that *the Board* generated written determinations of the salaries to be used in calculating their pensions. But based on the discussion above, the Board did no such thing. Rather, Kapelinski obtained figures for himself and Baldermann from the village payroll clerk and Kapelinski certified Baldermann's salary, while Herman certified Kapelinski's, both joined (perhaps reluctantly) by Pyznarski, the village treasurer. Regardless of whether Pyznarski was pressured into certifying the salary attached to rank for Baldermann

and Kapelinski, the fact that the figures were inserted on fill-in-the-blank forms previously approved by the Board does not transform their completion into valid Board action. Finally, that plaintiffs have been receiving their pensions cannot serve to validate action the Board never voted to take by the affirmative vote of a majority of its members. See *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 216 (2008) (receipt of pension payments, standing alone, not evidence of pension board's decision to award a certain amount of benefits).

¶ 44    Plaintiffs cite *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769 (1989), in support of their contention that the Board lacks jurisdiction to "reopen" consideration of their pensions. In that case, Rossler, a deputy chief of police, was granted a five-month leave of absence from the department in order to act as a security consultant for the 1984 Olympic Games in Los Angeles. The pension board approved the leave and agreed that the leave would be counted as creditable service toward Rossler's pension provided that he continued to make required contributions to the pension fund during his absence. After his return from leave, Rossler was notified that he had accumulated 20 years and 7 days of creditable service and he thereafter submitted an application for a retirement pension. The decision notes that the "request for a pension was granted unanimously" and Rossler was notified he would begin receiving a pension in a specified amount to commence on his fiftieth birthday. *Id*. at 772. More than two years later, the board notified Rossler that it had scheduled an administrative hearing to consider modification of his pension based on a claimed error in crediting the leave of absence to creditable service.

¶ 45    This court concluded that the board lacked jurisdiction to convene an administrative hearing because more than 35 days had elapsed from the date of the final administrative decision granting Rossler's pension. *Id*. at 774. The court also determined that a provision of the Pension Code allowing a board to recoup overpayment of a pension for "fraud, misrepresentation or error" did not apply given the lack of any evidence of fraud or misrepresentation on Rossler's part and the error, if any, was due to the board's own failure to confirm Rossler's creditable service. (Internal quotation marks omitted.) *Id*. at 774-75. Finally, the court found that even if the board possessed jurisdiction to modify the pension, it would be estopped from doing so since the board had (1) approved the leave, (2) informed Rossler that it would count toward his creditable service, (3) notified Rossler that he was eligible to retire with 20 years creditable service and (4) unanimously voted to grant Rossler's pension application. Because, in reasonable reliance on the board's actions, Rossler had retired and moved to another part of the country, the court found the circumstances warranted an admittedly rare finding of equitable estoppel against a public body. *Id.* at 775-76.

¶ 46    *Rossler* lends no support to plaintiffs. Most importantly, *Rossler* did not address any irregularity in the board decision granting Rossler a pension or any doubt regarding the finality of that decision. Therefore, we must assume that, unlike here, the board in *Rossler* did render a valid final administrative decision. In that context, the board's proposal to convene an administrative hearing to address Rossler's pension more than two years after its final decision exceeded the board's jurisdiction. "An administrative agency *** has no inherent or common law powers, but is empowered to act only pursuant to the authority it is granted by law." *Id.* at 773.

¶ 47    Further, the record here lacks any evidence that either Baldermann or Kapelinski sought and received assurances that their retirement "raises" counted as salary attached to rank for

pension purposes or that they retired in reliance on such assurances. Though plaintiffs point to the Board's treatment of the two prior retirees referenced above as a basis for their belief that they would be treated similarly, they neglect to mention the results of the 2006 Department of Insurance audit in which the department took the position that including the increases as salary attached to rank violated the Pension Code. And although the work agreement provides for a 20% salary increase on the date of retirement, it does not address whether that increase is to be considered salary attached to rank for pension purposes. So again, even if equitable considerations were relevant here, they would not aid plaintiffs.

¶ 48 Plaintiffs concede that if we agree with the circuit court's finding that there was no valid final administrative decision, we need not address the applicability of section 3-144.2 of the Pension Code (40 ILCS 5/3-144.2 (West 2010)), which permits recovery of overpayments to beneficiaries due to "fraud, misrepresentation or error." Because we have concluded that there was never any valid final administrative decision with respect to either plaintiff, it was unnecessary for the Board to predicate its conduct in convening a hearing on this section and we will not consider the issue further.

¶ 49 CONCLUSION

¶ 50 Given the abundant support in the record for the trial court's determination that the Board never rendered a valid final administrative decision on either plaintiff's pension application, we find that summary judgment in favor of the Board was proper and affirm the order of the circuit court of Cook County.

¶ 51 Affirmed.