2023 IL App (1st) 210472-U

FIFTH DIVISION
January 13, 2023

No. 1-21-0472

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| TORIANO BARNES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CH 06674 |
| | ) | |
| THOMAS J. DART, in His Official Capacity as | ) | Honorable |
| Sheriff of Cook County, and THE COOK | ) | Anna Helen Demacopoulos, |
| COUNTY SHERIFF'S MERIT BOARD, | ) | Judge presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant Cook County Sheriff's Office Merit Board did not take final administrative action where it failed to conduct a public vote on its decision to terminate plaintiff's employment.

¶ 2    Plaintiff Toriano Barnes appeals the Cook County Sheriff's Office Merit Board's decision to terminate his employment as a correctional officer. The Merit Board found that Barnes violated Sheriff's Office policies when he failed to disclose his secondary employment as a security guard and his relation to his cousin, an admitted gang member and inmate incarcerated in the same division where Barnes worked. The Merit Board also found that Barnes gave false or misleading

statements during the Sheriff's Office's investigation of his conduct. The circuit court affirmed the Merit Board's decision and dismissed his claims for retaliatory discharge and conspiracy to commit retaliatory discharge with prejudice.

¶ 3    Upon review of the administrative record, we asked the parties for supplemental briefing concerning the following issue: Did the Merit Board take "final" administrative action despite its failure to publicly vote on its written decision and in light of our holdings in *Howe v. Retirement Board of The Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 122446, and *Baldermann v. Board of Trustees of the Police Pension Fund*, 2015 IL App (1st) 140482.[1] For the following reasons, we reverse the circuit court's judgment and remand the cause to the Merit Board for further proceedings.

¶ 4    In June 2016, plaintiff Toriano Barnes's cousin, Leo Draper, visited Barnes at his Chicago home that he shared with his wife and daughters. Barnes and Draper had maintained a close relationship and saw each other once per week, often when Draper cut Barnes's hair. Prior to his arrival that day, Draper, an admitted gang member, had picked up a shipment of illegal drugs while under the surveillance of federal law enforcement agents. As Draper left Barnes's home after a short visit, the agents arrested Draper on the street and seized the drugs inside of his car. Barnes heard the commotion from his kitchen and stepped outside to find some of the agents near his front gate. He spoke with the agents, who briefly entered his home, providing them with his name and contact information and identifying himself as a Cook County correctional officer. Barnes did not report this outside contact with law enforcement to his supervisors at work.

---

[1] We also asked that the Merit Board append to its brief any meeting minutes reflecting a public vote on its administrative decision in this case. The Merit Board has supplied none.

¶ 5      Barnes and Draper kept in regular contact while Draper was incarcerated in the Cook County Department of Corrections through the next several months, conversing over the phone at least 12 times. During one of their conversations, Draper told Barnes that he would be detained in Division 6 of the CCDOC. Barnes then requested a transfer to the same division without disclosing that one of his relatives, Draper, was in custody there. Once the Sheriff's Office approved his request, Barnes let Draper know, "[T]he bids went through so you're going to be seeing me." Although Barnes was not assigned to the same tier where Draper's cell was located, Barnes saw Draper on at least three occasions prior to Draper's release in May 2017. In one instance, Barnes visited Draper at his jail cell to speak with him and offer reassurances after he learned that Draper was having difficulties.

¶ 6      Following Draper's arrest, Barnes had also posted part of his bail using, in part, income earned while working as a private security guard. Through the first five months of that year, Barnes had worked six to eight hour shifts at this security job on two to four days per month. At a subsequent bond hearing on the sources of Draper's bond money, Barnes recounted this information and admitted in open court that he had not reported his secondary employment to the Sheriff's Office. The assistant state's attorney who was present at the hearing later alerted the Sheriff's Office of Barnes's unreported secondary employment, leading the Sheriff's Office, Office of Professional Review to open an investigation into Barnes's conduct.

¶ 7      Sergeant Nicole Pagani, who led the investigation, reviewed the hearing transcripts, Draper's criminal history, and the audio records of Draper's calls to Barnes from prison. Sergeant Pagani learned of Barnes's job as a security officer, Draper's presence in the same division as Barnes, and the 12 calls that Draper made to Barnes while in custody. When Sergeant Pagani

questioned Barnes about this information, Barnes stated that he had worked as a security guard for one month and that he had spoken with Draper once or twice on the phone. In light of these statements, Sergeant Pagani believed that Barnes had been dishonest or, at the least, misleading in responding to her inquiries.

¶ 8      The Sheriff's Office filed a disciplinary complaint with the Cook County Sheriff's Office Merit Board charging Barnes with violations of the Sheriff's standing orders and rules of conduct. 55 ILCS 5/3-7012 (West 2018). After an evidentiary hearing before a hearing officer,[2] the Merit Board granted the Sheriff's Office's request to terminate Barnes's employment, finding that "Barnes by his own admissions violated the Rules and Regulations and General Orders of the Cook County Sheriff's Office and the Cook County Department of Corrections."

¶ 9      Barnes then filed a complaint in the Cook County circuit court seeking administrative review of the Merit Board's termination decision. 735 ILCS 5/3-110 (West 2018). Barnes also sought a declaration that the Merit Board's decision is void because the Merit Board issued it at a closed session in violation of the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2018)). The circuit court struck that count from the complaint and dismissed Barnes's other claims for retaliatory discharge and conspiracy to commit retaliatory discharge with prejudice. 735 ILCS 5/2-615 (West 2018). The circuit court subsequently affirmed the Merit Board's termination decision, and this timely appeal followed.[3]  Ill. S. Ct. R. 303 (eff. July 1, 2017).

_____

[2]  Merit Board member Gray Mateo-Harris served as the hearing officer. After Gray-Mateo's term ended, the Merit Board assigned the matter to member John J. Dalicandro, who then authored a draft decision circulated for the other members' review.

[3]  Defendants contest our jurisdiction to review the circuit court's dismissal of Barnes's retaliatory discharge claims with prejudice because that order adjudicated fewer than all the claims and the circuit court made no express finding that there was no reason for delay. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The circuit court's April 20, 2021 order, however, disposed of the entire case and all remaining claims, so no additional Rule 304(a) finding was necessary. See *Boostra v. City of Chicago*, 214 Ill. App.

¶ 10    As an initial matter, we must consider our jurisdiction in light of the Board's failure to vote on its written decision at a public meeting. If the Merit Board failed to issue a valid final decision, then we would not have jurisdiction to consider Barnes's appeal. See 735 ILCS 5/3-103 (West 2018); see also, *e.g.*, *Howe*, 2013 IL App (1st) 122446, ¶ 32; *Lawrence v. Williams*, 2013 IL App (1st) 130757, ¶ 23.

¶ 11    In furtherance of our State's policy "that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the conduct of their business," the Open Meetings Act broadly requires public bodies to act and deliberate openly." 5 ILCS 120/1 (West 2018). Although quasi-judicial bodies, such as the Merit Board, may consider employee disciplinary matters in closed meetings, provided that they set forth their reasoning and findings in writing (*id.* § 2(d)(4)), they must render final actions at open meetings (*id.* § 2(e)). Accordingly, we held in *Howe* that where the retirement board failed to hold a public vote on its written decision denying pension benefits, it had not taken a final administrative action to dispose of the pensioner's application. *Howe*, 2013 IL App (1st) 122446, ¶ 26. We explained: "No public body in Illinois subject to the Open Meetings Act can take final action by merely circulating some document for signature and not voting on it publicly." *Id.*

¶ 12    Here, the Merit Board followed the process that prompted us to reverse and remand in *Howe*. The Merit Board concedes that its members each signed the drafted decision without conducting a public vote. Given the absence of a public vote on its decision to terminate Barnes,

3d 379, 385 (1991). As to Barnes's claim under the Open Meetings Act, Barnes elected to stand on his complaint rather than replead within the time prescribed by the circuit court. See *River Breeze, LLC v. Granholm*, 2022 Ill App (2d) 210704, ¶ 18. Accordingly, we have jurisdiction to consider Barnes's appeal from the circuit court's judgment.

the Merit Board's method of issuing its decision plainly violated the Open Meetings Act. See 5 ILCS 120/2(e) (West 2018) ("No final action may be taken at a closed meeting.").

¶ 13    Relying on *American Federation of State, County and Municipal Employees, Council 31 v. Illinois Labor Relations Board*, 2017 IL App (5th) 160046 (*AFSCME, Council 31*), the Merit Board maintains that its Open Meetings Act violation does not divest us of jurisdiction to review its decision. Although a violation does not necessarily warrant vacating a public body's final decision (*e.g.*, *Powell v. East St. Louis Electoral Board*, 337 Ill. App. 3d 334, 338-39 (2003)), we will not uphold it where the public body's noncompliance undermines the Open Meeting Act's purpose. See *Lawrence* 2013 IL App (1st) 130757, ¶ 21. In *AFSCME, Council 31*, the court reasoned that declaring an agency's decision null and void is "an 'extreme remedy' " granted under limited circumstances. *AFSCME, Council 31*, 2017 IL App (5th) 160046, ¶¶ 27-28 (citing 5 ILCS 120/3(c) (West 2014)). Because there were not "multiple procedural flaws," as in *Howe* and *Baldermann*, the court declined to vacate the public body's final action notwithstanding any failure to comport with the Open Meeting Act's requirements. *Id.* ¶¶ 26, 29-30.

¶ 14    Here, however, the question is one of jurisdiction, and we have no discretion to review administrative actions when it is absent. See Ill. Const. 1970, art. VI, § 6; 735 ILCS 5/3-104 (West 2018); see also *Illinois State Treasurer*, 2015 IL 117418, ¶ 14 (presumption of general jurisdiction does not apply to review of administrative proceedings). The failure to hold a public vote necessarily means that there was no final administrative decision, a prerequisite to our jurisdiction. *Baldermann*, 2015 IL App (1st) 140482, ¶ 25 ("*Final* administrative decisions of the Board are subject to review under the Administrative Review Act. [Citation.]" (Emphasis added.)); *Howe*, 2013 IL App (1st) 122446, ¶ 32 ("Accordingly, we cannot blindly gloss over the Board's error by

granting an imprimatur to its decision. The Board never took valid final action \*\*\*."). We therefore reverse the circuit court's judgment and remand the cause to the Merit Board.

¶ 15    Circuit court judgment reversed; cause remanded to the Merit Board.