N B D HIGHLAND PARK BANK, N.A., Plaintiff-Appellee, v. ROBERT E. WIEN *et al.*, Defendants-Appellants.

Second District   No. 2—92—1412

Opinion filed October 26, 1993.—Rehearing denied November 16, 1993.

Hercules Paul Zagoras, of Hercules Paul Zagoras & Associates, Ltd., of Waukegan, and Scott R. Halloin, of Freeman, Freeman & Salzman, P.C., of Chicago (James T. Malysiak, of counsel), for appellants.

Ethan E. Trull, of Seyfarth, Shaw, Fairweather & Geraldson (Paul F. Donahue, of counsel), Karon Sheldon, of Keck, Mahin & Kate, Martin W. Salzman, of Schwartz, Cooper, Kolb & Gaynor, Chartered, and Paul D. Rudnick, of Rudnick & Wolfe, all of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

This appeal arises from a foreclosure action against a residential property (the property) in Highland Park, Illinois, owned by Robert E. Wien (Robert) and his wife, Miriam. The original plaintiff, N B D Highland Park Bank, N.A. (Bank), filed a foreclosure action against the property, and its first mortgage was uncontested. Robert's brother Byron R. Wien (Byron) joined in that action, claiming a junior lien against the property. Byron objected to the sale of the property

to Katahn Associates, Inc. (Katahn), a former codefendant in the Bank's lawsuit. Katahn purchased the Bank's lien and substituted as plaintiff. Byron appeals from the circuit court's order confirming the sale of the property to Katahn.

The issues raised on review involve questions of both law and fact. Specifically, we are asked to determine: (1) whether the circuit court erred by permitting the property to be sold at a foreclosure sale before determining the priorities of Katahn's and Byron's lien interests, and (2) whether the circuit court erred in confirming the foreclosure sale despite Byron's objections that he was not informed of the sale date and that the circuit court lacked jurisdiction over the case when the sale date was set and the sale was held. We note that the issue of priorities subsumes crucial questions about the validity of Byron's claim. We reverse and remand.

On December 6, 1988, the Bank received a mortgage from Robert and Miriam Wien. The Bank held an undisputed first security interest in the property by recording its mortgage in Lake County on December 9, 1988.

On October 10, 1991, Katahn obtained a Federal court judgment against Robert, based upon mail fraud, wire fraud, and conversion, in the amount of $233,935, trebled under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §1961 *et seq.* (1982)) to $701,805. Katahn recorded its judgment in Lake County on November 6, 1991.

On January 24, 1992, the Bank filed a complaint to foreclose its mortgage on Robert and Miriam's house pursuant to section 15—1504 of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15—1504 (West 1992)). In addition to the Wiens, the complaint named as defendants the Chicago Title & Trust Company, the United States, which had a tax lien upon the property, and two judgment creditors. One of the judgment creditors was Katahn, whose interest in the property was a part of its settlement agreements with Robert.

On April 30, 1992, Byron joined Chicago Title & Trust Company in the foreclosure action. Byron claimed a junior lien against the property based upon two 1988 principal notes signed by his brother Robert and a 1989 trust deed signed by Robert and Miriam. The notes were in return for loans Byron made to Robert on February 17, 1988, and March 9, 1988, in the amounts of $100,000 and $170,000, respectively. The trust deed, recorded on February 2, 1989, with the Chicago Title & Trust Company as trustee, allegedly pledged Robert's home as security for the notes.

On May 4, 1992, Katahn filed its answer and counterclaim seeking to foreclose its judgment lien against Robert's property. Katahn alleged that Byron's interest in the property was void, or at least subordinate to Katahn's judgment lien, for lack of consideration. In the alternative, Katahn claimed that Byron's interest was void or subordinate to Katahn's interest because it was a fraudulent conveyance from Robert and Miriam to shield their house from their creditors.

On May 18, 1992, the circuit court entered a final judgment for foreclosure and sale. The circuit court found that the sum of $701,805 was due and owing Katahn, as a lien upon the property that was subordinate and inferior to the lien and interest of the Bank. The court stated that the sum due and owing to Chicago Title & Trust Company pursuant to its verified pleadings was "to be determined." The circuit court deferred determination of the priority of the lienholders' interests, stating that it "retained jurisdiction to determine the relative priorities of the *** liens at or before confirmation of sale pursuant to Ch. 110, ILL. REV. STAT. Sec. 15—1508(b)(3) and Sec. 15—1506(h)."

On the same day, May 18, the Bank noticed and scheduled the sheriff's sale of the property for August 31, 1992, and the circuit court filed a second order setting a hearing on the validity and priority of liens for July 27, 1992.

On July 13, 1992, Katahn filed a motion for summary judgment against Byron, based, in part, upon its discovery that the two principal notes upon which Byron's interest was allegedly based had been stamped "canceled" approximately three years before. This action followed the filing of Byron's first amended counterclaim on June 1, 1992, in which he again alleged that his interest in the property was based upon the original two 1988 principal notes. In response to Katahn's motion for summary judgment, Byron filed a second amended counterclaim on July 27, 1992, asserting that his interest in the property was based upon a different pair of principal notes. Byron filed a motion for summary judgment against Katahn on August 13, 1992.

On August 24, 1992, the circuit court denied both motions for summary judgment on the ground that there were triable issues of fact. The matter was continued until August 31, 1992, following the foreclosure sale, for the setting of a bench trial date. On August 24, 1992, Katahn also substituted as plaintiff in this action, having purchased the Bank's lien on August 18.

On August 26, 1992, Robert filed for protection under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §1101 *et seq.* (1982)). The sheriff's sale was continued to September 21, 1992. On August 31, the circuit court placed this case on the progress call for

November 20, 1992. On September 10, 1992, Byron removed this case to the bankruptcy court, asserting that Katahn's fraudulent transfer allegations constituted a "core proceeding" arising under title 11 and that a transfer found to be fraudulent would be preserved for the benefit of Robert's estate.

Katahn sought relief from the bankruptcy court, moving to lift the automatic stay and to remand this case to the circuit court. While these motions were pending in the bankruptcy court, Katahn twice adjourned and continued the sheriff's sale from September 21, 1992, to September 28, 1992, and then again to October 12, 1992. Katahn maintains that each continuance of the sale was properly noticed by public proclamation. Byron claims that he had insufficient notice of the continuances and that Katahn was obligated to send Byron copies of his counsel's letters to the sheriff confirming them.

On October 5, 1992, following an evidentiary hearing, the bankruptcy court allowed the motions to remand and to modify stay. Ruling from the bench, the bankruptcy court found that lien priority disputes were not "core proceedings" in the United States Court of Appeals for the Seventh Circuit. The court noted further reasons for its orders, including judicial economy, better protection of Miriam Wien's interests, and its view that questions of State law are more appropriately and better addressed by a State court. The bankruptcy court also stated its opinion that the Illinois Mortgage Foreclosure Law provides for the protection of the debtor's interests and the maximization of the potential market value of the property.

The sheriff's sale was held on October 12, 1992. The orders to remand and to lift the stay were docketed by the bankruptcy court's clerk on October 14 and 15, respectively.

On November 9, 1992, the circuit court confirmed the sale of the property for $121,760.25. Byron filed a notice of appeal on November 25, 1992. On November 27, 1992, Katahn's attorney and his wife purchased the property from Katahn for $310,000. The circuit court granted a stay of its order confirming the foreclosure sale on December 1, 1992. The deadline for posting an appeal bond was extended from December 16, 1992, to January 6, 1992, when the bond was filed and approved.

■ The first issue we address is whether the circuit court lacked jurisdiction over the cause at the time the foreclosure sale was held. We believe the established rule in Federal courts is clearly stated by the United States Court of Appeals for the Fifth Circuit:

> "Orders do not become final until they are docketed. The reasons for respecting finality of judgments do not apply to un-

docketed orders. They cannot be enforced. They cannot be appealed. Hence, judges may change their decisions until they are docketed." (*In re American Precision Vibrator Co.* (5th Cir. 1989), 863 F.2d 428, 429.)

Moreover, Bankruptcy Rule 9021 (Bankr. Proc. R. 9021, 11 U.S.C.A. (West 1993)) provides that "[a] judgment is effective when entered as provided in Rule 5003," and Rule 5003 (Bankr. Proc. R. 5003, 11 U.S.C.A. (West 1993)) requires that the clerk enter each judgment and order on a docket.

Here, the remand order was not entered on the bankruptcy court's docket sheet until October 14, 1992, and the order lifting the stay was not entered until October 15.

Katahn's counterargument is based on *Noli v. Commissioner of Internal Revenue* (9th Cir. 1988), 860 F.2d 1521. In *Noli*, the defendants filed bankruptcy petitions that automatically stayed a trial in the tax court. The government's counsel moved the bankruptcy court for relief from the automatic stay, which the court granted by an oral order. The government then immediately proceeded with the trial based upon the bankruptcy court's undocketed oral order. The defendants argued that the tax court proceedings were improper because the bankruptcy court's oral order lifting the automatic stay had not been docketed. The *Noli* court replied as follows:

"This argument misperceives both the purpose of Fed. R. Civ. P. 58, and the binding effect of an order notwithstanding the issuing court's failure to enter it on the docket. The 'separate document' requirement of Rule 58 was intended primarily to clear up uncertainties in determining, for purposes of appellate review, when there is a final appealable judgment. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S. Ct. 1117, 1120, 55 L. Ed. 2d 357 (1978) (The 'sole purpose' of the separate document requirement is 'to clarify when the time for appeal ... begins to run'). Similarly, the bankruptcy court's order lifting the stay was effective and binding upon the parties. \*\*\* They were present when the oral order was issued and clearly had notice of its existence and content." *Noli*, 860 F.2d at 1525.

According to Katahn, both Byron and Miriam Wien were represented by counsel at the bankruptcy hearing on October 5, 1992, and heard the ruling from the bench that the motions to remand and to modify stay were allowed. Furthermore, both Wiens received copies of the bankruptcy court's written orders signed and entered on October 9, 1992, and, on the same day, Katahn filed with the circuit court

a copy of the order modifying the automatic stay. Katahn contends that, like the defendants in *Noli*, Byron had notice that the orders existed, and he knew the content of those orders; therefore, the automatic stay was no longer in effect, and the sheriff acted properly when he conducted the sale on October 12, 1992.

We believe Katahn's reliance upon *Noli* is misplaced. As the United States Court of Appeals for the Ninth Circuit clarified in a subsequent opinion (*Blazak v. Ricketts* (9th Cir. 1992), 971 F.2d 1408), *Noli* requires a petitioner to establish that he was prejudiced by the bankruptcy court's failure to enter a separate judgment. (*Blazak*, 971 F.2d at 1409 n.2; *Noli*, 860 F.2d at 1525.) In *Noli*, it was proper for the tax court to proceed before the lift stay order was docketed because neither party was prejudiced by resuming the trial in midstream. In the present case, departing from the Federal civil procedure rules clearly prejudiced Byron, since the continued trial was never held, and the property was prematurely sold.

The addition of Federal Rules of Civil Procedure 58 in 1963 did not alter the prior law that the entry of judgment is to be determined by the date the appropriate notation is made in the civil docket. (*Eulo v. Deval Aerodynamics, Inc.* (E.D. Pa. 1969), 47 F.R.D. 35, 40; see also 7 (part 2) J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice §79.02[2], at 79—12 (Supp. 1993); 12 C. Wright & A. Miller, Federal Practice & Procedure §3103, at 189 (1973).) Therefore, we find that the circuit court lacked jurisdiction over the case when the foreclosure sale was held.

■ Next, we address whether the circuit court erred by permitting the property to be sold at a foreclosure sale before determining the priorities of the disputed lien interests. Section 15—1506(h) of the Foreclosure Law states: ''With the approval of the court prior to the entry of the judgment of foreclosure, a party claiming an interest in the proceeds of the sale of the mortgaged real estate may defer proving the priority of such interest until the hearing to confirm the sale.'' (735 ILCS 5/15—1506(h) (West 1992).) Thus, a party claiming an interest in the proceeds of the sale of mortgaged real estate may elect to defer proving the priority of his interest until after the foreclosure sale is held, provided the party so electing first seeks and gains the approval of the court. The record on appeal shows that Byron did not defer proving the priority of his interest.

Byron maintains that on August 24, 1992, the circuit court, *sua sponte*, ordered a deferral of the determination of priority until after the sale. Katahn responds that no such order was entered. It is true that the August 24 order does not mention deferral. However, the

transcript of the hearing clearly reveals the circuit court's intention to meet with the parties after the sale to set a trial date in order to determine the validity and the priority of the lien interests. Although not explicitly stated in the order, we believe that the sequence of events as scheduled by the circuit court constituted a deferral of the priority issue.

Katahn argues that Byron has waived this issue because he did not appeal within 30 days from the circuit court's May 18, 1992, judgment for foreclosure and sale. Katahn cites the order's statement that "the Court retains jurisdiction to determine the relative priorities of the *** liens at or before confirmation of sale" and notes that the judgment contains an express finding that there is no just cause for delaying enforcement or appeal.

We believe that the failure to file an immediate appeal on the basis of the court's statement quoted above was reasonable given the further pronouncements of the court regarding the issue of priority determination. The pertinent part of the court's statement reads in full, "the Court retains jurisdiction to determine the relative priorities of the *** liens at or before confirmation of sale *pursuant to Ch. 110, ILL. REV. STAT. Sec. 15—1508(b)(3) and Sec. 15—1506(h)*." (Emphasis added.) Section 15—1508(b)(3) provides that the sale's confirmation order may "determine the priority of the judgments of parties who deferred proving the priority pursuant to subsection (h) of Section 15—1506." (735 ILCS 5/15—1508(b)(3).) Further into its order, the circuit court sets forth the content of section 15—1508(b)(3).

We believe the circuit court's statements reasonably signify that any proof of priority not deferred by a party would be determined before the confirmation of the sale, while any proof of priority that was deferred by a party might not be determined until the proceedings to confirm the sale.

This interpretation is reinforced by the second order filed by the circuit court on May 18. In that order, the court established a discovery cut-off date of July 20, 1992, and stated that "[t]his matter shall be set for hearing on evidence on the validity and priority of liens on 27 July 1992." On the same day, the Bank scheduled and noticed a sheriff's sale for August 31, 1992. Thus, as of May 18, 1992, it appeared that the priorities would be determined prior to the sale.

Katahn further contends that the issue is waived because Byron never argued before the circuit court that it could not defer the determination of priority unless he elected to defer that determination. Katahn urges us to apply the rule that a legal theory not presented below is waived on appeal. We believe that this rule does not apply

where the opportunities for presenting arguments and theories were improperly curtailed. Although the circuit court found triable issues of fact, a trial was never held. The possibility of filing post-trial motions was obviously eliminated. Therefore, we conclude that Byron's argument that the circuit court was statutorily prohibited from deferring the determination of priority is not waived.

The question of the validity of Byron's lien interest is fundamental to this litigation. When it ordered the foreclosure and sale of the property on May 18, 1992, the circuit court set a date for a "hearing on evidence on the validity and priority of liens." Katahn's charge of fraud constituted a serious challenge to the validity of Byron's lien interest. The circuit court gave Byron leave to file his second amended counterclaim, in which he stated that his lien interest was based on different principal notes. The circuit court's July 27, 1992, order continued "the trial on the validity and priority of lien." Byron himself claims that the validity of his interest was never established by the circuit court. Thus, the question of validity, which necessarily precedes any determination of priority, must be resolved first on remand.

Because we reverse on the basis of the above findings, we do not address the question of whether Byron received proper notification of the sale date, nor do we reach the jurisdictional issue of the propriety of the county sheriff's continuing the sale while the case was in the bankruptcy court.

Three motions were ordered carried with the case. Katahn filed two motions to dismiss this appeal. In the first, Katahn asserted that the sale of the residence to its attorney and his wife occurred before Byron obtained a stay and therefore rendered Byron's appeal moot. Katahn quotes a portion of Supreme Court Rule 305(i) to support his position. However, Katahn omits the opening clause of Rule 305(i), which modifies the remainder of the provision. The pertinent part of Rule 305(i) reads in full:

> "*If a stay is not perfected within 30 days of the entry of the judgment appealed from, or within any extension of time granted under subparagraph (a)(2) of this rule,* the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed ***."
> (Emphasis added.) 134 Ill. 2d R. 305(i).

See also *Town of Libertyville v. Moran* (1989), 179 Ill. App. 3d 880, 883-84.

The circuit court granted a stay on December 1, 1992, 22 days after the November 9, 1992, order from which this appeal was taken. The December 1, 1992, stay required the posting of an acceptable bond, and the time for filing such a bond was extended from December 16, 1992, to December 23, 1992, and finally to January 6, 1992, when the bond was filed and approved. Under Rule 305(a)(2) (134 Ill. 2d R. 305(a)(2)), the time for filing and approval of the appeal bond may be extended by the circuit court if such extensions do not aggregate more than 45 days, unless the parties otherwise stipulate. Here, the extension aggregated only 29 days. Thus, the January 6, 1993, order stating that the stay "shall remain in full force and effect" is proper, and Katahn's first motion to dismiss this appeal is denied.

Katahn's second motion to dismiss this appeal stems from Katahn's motion for sanctions against Byron and his attorney. In an order dated May 12, 1993, the circuit court ordered sanctions levied because "reasonable inquiry was not made to find the proper [principal] notes prior to filing [Byron's] first amended counterclaim." Asserting that the sanctions order establishes the invalidity of Byron's lien interest, Katahn reiterates its argument that Byron's failure to appeal from the circuit court's original order of foreclosure of May 18, 1992, precluded him from subsequently asserting an interest based on different principal notes.

We read the sanction order more narrowly. As stated above, we believe that the determination of the validity of Byron's interest, like the determination of the relative priorities, was continued by the circuit court along with the date for the bench trial. Sanctions for failure to make a reasonable inquiry during this period of continuance do not alter our view that the questions of validity and priority were still pending before the circuit court when the foreclosure sale was conducted. Therefore, Katahn's second motion to dismiss this appeal is denied.

Katahn also moves to strike certain parts of Byron's reply brief, namely, copies of pleadings filed by Katahn in the bankruptcy court and a footnote referring to one of the pleadings. Katahn asserts that this material was not considered by the circuit court and should not be part of the record on appeal. Byron responds that the material reveals an inconsistency between Katahn's positions on appeal and in the bankruptcy court with respect to determining the relative priorities of the disputed lien interests before conducting the sale.

It is well settled that public documents that are included in the records of other courts and administrative tribunals may be the subject of judicial notice. (*May Department Stores Co. v. Teamsters Un-*

*ion Local No. 743* (1976), 64 Ill. 2d 153, 159; *First State Bank v. Leffelman* (1988), 167 Ill. App. 3d 362, 367.) However, we are not concerned here with the consistency of Katahn's position regarding the determination of priority by the circuit court. Our finding of error in permitting and confirming the sale before determining the relative priorities rests on the pertinent statutory provisions. The new material presented in Byron's reply brief is not helpful to our present purpose, and we decline to take judicial notice of it. Therefore, Katahn's motion to strike is granted.

For the reasons stated above, the order of the circuit court of Lake County confirming the sale is reversed, the sale is vacated, and the cause is remanded. The circuit court is directed to conduct proceedings to determine the validity of Byron's lien interest and the relative priority of any valid interest and to order a new sale of the foreclosed property.

Reversed and remanded.

INGLIS, P.J., and DOYLE, J., concur.