NOTICE
Decision filed 11/8/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 160046

NO. 5-16-0046

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, | ) ) ) | Petition for Review of an Order of the Illinois Labor Relations Board, |
| Petitioner, | ) ) | State Panel. |
| v. | ) ) | |
| THE ILLINOIS LABOR RELATIONS BOARD and THE STATE OF ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, | ) ) ) ) | No. S-CA-16-007 |
| Respondents. | ) ) | |

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Goldenhersh and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, the American Federation of State, County, and Municipal Employees, Council 31 (AFSCME), appeals a decision of the Illinois Labor Relations Board (ILRB) dismissing its unfair labor charge against the State of Illinois Department of Central Management Services (CMS). The charge challenged a policy requiring employees to pay the entire cost of their health insurance premiums for any pay period during which they go on strike, even if they are not on strike for the entire pay period. The charge was dismissed without a hearing. AFSCME argues that the ILRB abused its discretion because AFSCME presented sufficient evidence to warrant a hearing on its claims that (1) the policy was a unilateral change

1

to a term of employment instituted at a time when the parties were in negotiations for a new contract and (2) the policy improperly threatened to penalize employees for lawfully exercising their right to strike.

¶ 2    After briefing was complete in this appeal, CMS filed motions asking this court to take judicial notice of unrelated proceedings between the same parties pending in other courts. In those proceedings, AFSCME argued that the procedures followed by the ILRB violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2014)), which meant that its decision was not a final order. In the motions to take judicial notice it filed in this case, CMS argued that the position AFSCME took in the other proceedings was contrary to its assertion here that this court has jurisdiction. CMS also filed a motion asking this court to remand this matter to the ILRB to allow the ILRB to conduct additional proceedings that would eliminate any Open Meetings Act problem. Although none of the parties challenge our jurisdiction over this matter, the question of our jurisdiction is implicated by CMS's motions, and we will therefore address it. We find that we have jurisdiction to hear this appeal; we grant CMS's motion to take judicial notice; we deny CMS's motion to remand; and we reverse the decision of the ILRB.

¶ 3    On July 27, 2015, AFSCME filed the unfair labor charge against CMS that forms the basis of this appeal. In the charge, AFSCME alleged as follows: In June 2015, while the parties were in negotiations for a new collective bargaining agreement, CMS posted a list of frequently asked questions (FAQs) on its website. One of the questions concerned the payment of health insurance premiums for employees who go on strike. The posted response indicated that employees engaged in a strike would be required "to immediately pay the full cost of their health insurance" premiums. AFSCME further alleged that the State continues to pay its share of the premiums during other types of unpaid absences.

2

¶ 4    In the charge, AFSCME argued that the policy set forth in the FAQ response violates section 10(a)(1) and section 10(a)(2) of the Illinois Public Labor Relations Act (Labor Relations Act) (5 ILCS 315/10(a)(1), (2) (West 2014)). AFSCME argued that the policy discriminates against employees for going on strike, an activity protected under the Labor Relations Act, because it treats striking employees differently from other employees who go on unpaid leave.

¶ 5    Attached to the charge were a printout of the FAQs posted on the CMS website and a copy of portions of the State of Illinois employee benefits handbook. The relevant question and response read as follows:

> "Q. Will striking employees still receive health insurance?
>
> A. Yes, but striking employees will be responsible for the full cost of their health insurance, including the amount normally contributed by the State on behalf of the employee. If striking employees miss any day during the pay period due to being on strike, they will be sent a bill for the full cost of their coverage."
> https://www.illinois.gov/employeefaqs/pages/default.aspx

The employee benefits handbook contained rules governing eligibility for the employer contribution to health insurance for several types of unpaid leaves of absence. It showed that employees remain eligible for the employer contribution to their health insurance premiums during many, but not all, types of unpaid leave. It did not address the responsibility for paying health insurance premiums when employees go on strike.

¶ 6    The unfair labor charge was assigned to ILRB member Michael Provines for investigation. In July and August of 2015, Provines corresponded by e-mail with attorneys from AFSCME and CMS to clarify the issues to be considered. During that correspondence, counsel for AFSCME argued that the policy in the FAQ constituted an unfair labor practice for three

3

reasons. First, the policy acts as a threat to dissuade employees from striking because its message to employees is that if they go on strike, even for one day, they would be required to pay the full amount of their health insurance premiums for the entire pay period. See 5 ILCS 315/10(a)(1) (West 2014). Second, the policy constitutes a unilateral unbargained-for change in a term of employment-health insurance. See 5 ILCS 315/10(a)(4) (West 2014); *Vienna School District No. 55 v. Illinois Educational Labor Relations Board*, 162 Ill. App. 3d 503, 506-07 (1987) (citing *National Labor Relations Board v. Katz*, 369 U.S. 736, 743-47 (1962)). Third, the policy discriminates against employees who go on strike because other employees on unpaid leaves of absence do not have to pay the employer's share of their health insurance premiums. See 5 ILCS 315/10(a)(2) (West 2014).

¶ 7     On September 15, 2015, CMS sent a letter to Provines that served as its response to the unfair labor charge. It argued that communicating its policy to its employees is protected as free speech under section 10(c) of the Labor Relations Act. See 5 ILCS 315/10(c) (West 2014). CMS also argued that the policy is not an unfair labor practice. CMS noted that an employer is not required to subsidize a strike. It pointed out that, consistent with this principle, the reply to another FAQ on the website indicates that striking workers would not be paid during a strike, a policy the union does not challenge. CMS argued that the policy concerning health insurance premiums was no different from the policy concerning wages. Finally, CMS argued that the policy expressed in the FAQ was not a new policy and therefore did not change a term or condition of employment during contract negotiations. In support of this argument, CMS alleged that during a 2004 strike by employees of Northeastern Illinois University, the policy was applied to those striking workers. Attached as an exhibit was a chart of the "pay codes" used by CMS for various types of leaves of absence, including strikes. The chart indicates that striking

4

employees are "100% responsible" for their health insurance premiums. It does not address whether those employees are responsible for their entire premiums only for the duration of the strike or for the remainder of the pay period as well.

¶ 8    In further e-mail correspondence, Provines asked counsel for CMS whether employees are coded as "on strike" for the entire pay period, regardless of how many days they are on strike, and, if so, why. Counsel indicated that the pay codes apply to entire pay periods, regardless of the duration of the strike. He explained that it was "practically impossible" for the payroll system to prorate health insurance premiums. He noted that other pay codes for unpaid leaves of absence are handled the same way.

¶ 9    Provines forwarded the pleadings and correspondence to Executive Director Melissa Mlynski, who issued a decision and recommended order on October 27, 2015. She found that negotiations for a new collective bargaining agreement began in February 2015 and that the FAQ response was first posted in June 2015. She further found that the employees represented by AFSCME in the affected bargaining units were not then on strike and had never gone on strike. She also noted that, although AFSCME never filed an amended charge, CMS had actual notice of all three of its arguments. She therefore considered all three.

¶ 10    Mlynski first analyzed AFSCME's contention that the policy discriminates against employees for engaging in a strike, a protected activity under the Labor Relations Act. See 5 ILCS 315/10(a)(2) (West 2014). She explained that to prevail on such a claim, the union must show that the employees actually engaged in protected activity (such as a strike); that the employer was aware of their activity; and that the employer took an adverse action against the employees. She concluded that because the bargaining units at issue had never gone on strike and

5

the policy had never been applied to them, AFSCME's charge failed to state a claim under section 10(a)(2).

¶ 11 Mlynski next considered AFSCME's claim that CMS made a unilateral change to a term of employment when it announced the policy in the FAQ. She noted that AFSCME, as the charging party, had the burden of showing at least some evidence that CMS had unilaterally changed a term of employment in order to be entitled to a hearing on this issue. Pointing to CMS's assertion that the 2004 Northeastern Illinois University strike was handled in the manner described in the FAQ, she found that AFSCME did not present sufficient evidence to warrant a hearing on this issue.

¶ 12 Finally, Mlynski considered AFSCME's claim that the policy violates section 10(a)(1) by threatening or dissuading employees from striking. In rejecting this claim, she pointed to the State's policy of not paying the salaries of striking employees while they are on strike, a policy the union did not challenge. She found that the policy concerning health insurance premiums was no different from this policy. She concluded that the unfair labor charge should be dismissed without a hearing.

¶ 13 On November 9, AFSCME filed an appeal with the ILRB. AFSCME conceded that its claim of discrimination under section 10(a)(2) was not ripe for decision because the policy had not been applied to its members. It argued, however, that there was at least sufficient evidence to raise questions on both of its other claims. First, AFSCME pointed out that it would be an unfair labor practice under section 10(a)(1) to penalize striking employees by refusing to pay their salaries for an entire pay period, rather than just during the strike. It argued that the policy at issue was analogous to such a practice. Second, AFSCME argued that there was a genuine issue of fact concerning whether the FAQ constituted a change in policy during contract negotiations,

6

an unfair labor practice under section 10(a)(4). In support of this argument, AFSCME alleged that CMS did not communicate this policy to the union or its members prior to posting it online. AFSCME also alleged that its research showed that during the 2004 Northeastern Illinois University strike, no faculty members were billed for the employer's share of their health insurance premiums and that nontenure track faculty members were reimbursed for improper deductions after the strike ended. AFSCME argued that a hearing was necessary to resolve both of its claims.

¶ 14    On December 15, 2015, the ILRB voted to adopt the decision of Executive Director Mlynski. This vote took place at a meeting of the ILRB's State Panel that was open to the public. On January 22, 2016, the ILRB issued a written decision adopting Mlynksi's decision and dismissing the unfair labor charge. AFSCME timely filed a petition for review with this court.

¶ 15    This matter was fully briefed and ready to proceed to oral argument by December 2016. On December 6, CMS filed a motion, asking us to take judicial notice of an appeal pending in the Fourth District involving the same parties. Two days later, CMS filed another motion, asking us to take judicial notice of two additional proceedings involving the same parties—an appeal in the First District and a petition filed by AFSCME in the Cook County circuit court. In those matters, all of which involved a single decision of the ILRB, AFSCME asserted that the decision was not a valid final administrative decision because the ILRB's procedures violated the Open Meetings Act. CMS argued in the motions it filed in this case that because the ILRB followed the same procedure in this case that it followed there, the position taken by AFSCME in those proceedings is at odds with its invocation of our jurisdiction in this case.

¶ 16    On December 21, 2016, CMS filed a motion, asking this court to remand this matter to the ILRB without considering the merits. CMS stated that it took no position on the Open

7

Meetings Act argument raised by AFSCME in the other proceedings. However, CMS argued that in light of the unsettled Open Meetings Act question, the interest of judicial economy would be best served by remanding the matter to the ILRB to allow it to hold additional proceedings that would eliminate any Open Meetings Act problem. Both AFSCME and the ILRB opposed the motion to remand.

¶ 17    We heard oral argument in this case in April 2017. At that time, we asked all three parties to provide us with supplemental arguments on the questions of jurisdiction and the motion for remand. We note that none of the parties have argued that we lack jurisdiction. Nevertheless, we have an obligation to independently consider our jurisdiction, even if it is not challenged by the parties, and we must dismiss the appeal if we do not have jurisdiction to decide it. See *Fligelman v. City of Chicago*, 264 Ill. App. 3d 1035, 1037 (1994). We will therefore address the question. We turn now to the issues raised by CMS's motions.

¶ 18    We first consider the two motions to take judicial notice. A court may take judicial notice of documents in the records of other courts or administrative tribunals. *NBD Highland Park Bank, N.A. v. Wien*, 251 Ill. App. 3d 512, 520 (1993) (citing *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976)). We therefore grant both motions and take judicial notice of the proceedings CMS identified.

¶ 19    As we mentioned earlier, all three proceedings involved one decision of the ILRB. There, each of the parties filed an unfair labor charge against the other party. The two charges were consolidated for a hearing before an administrative law judge (ALJ). The ALJ issued a lengthy decision and recommended order. Both parties appealed different portions of that decision to the ILRB. The ILRB did not adopt the ALJ's decision in its entirety. Instead, it voted to adopt only certain portions of the ALJ's order. The vote took place at a hearing that was open to the public.

8

¶ 20     CMS filed a petition for review with the Fourth District almost immediately, before the ILRB issued a written order. AFSCME filed a motion to dismiss, arguing primarily that the decision of the ILRB was not a final and reviewable decision because no written decision had been issued. See 5 ILCS 315/11(c), (e) (West 2014). AFSCME further argued that in order for a written decision of the ILRB to be a final and reviewable decision, the ILRB must comply with the requirements of the Open Meetings Act. AFSCME argued that to comply with the Open Meetings Act, the ILRB would need to vote on the final written order at a meeting open to the public. See *Baldermann v. Board of Trustees of the Police Pension Fund*, 2015 IL App (1st) 140482, ¶ 37; *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 122446, ¶ 32. It is this latter argument that CMS calls to our attention in its motions.

¶ 21     A few weeks after CMS filed its petition for review in the Fourth District, the ILRB issued its written decision. It did not hold an additional public hearing to vote on that decision. AFSCME then filed a petition for injunctive relief in Cook County, arguing that this procedure violated the Open Meetings Act. See 5 ILCS 120/3(a) (West 2014) (providing that any individual may bring a civil action seeking relief for violations of the Open Meetings Act). AFSCME also filed its own petition for review in the First District, addressing the merits of the ILRB's decision in case it does not prevail on its Open Meetings Act argument. The First District appeal was subsequently transferred to the Fourth District and consolidated with the appeal previously filed there. The consolidated appeal remains pending.

¶ 22     Before turning to the question of jurisdiction, a brief explanation of the rationale underlying AFSCME's Open Meetings Act argument will be helpful. The statutory definition of a "public body" includes administrative agencies of the State, thus the ILRB is a public body subject to the requirements of the Open Meetings Act. See 5 ILCS 120/1.02 (West 2014). The

9

Open Meetings Act requires that all meetings of public bodies be open to the public, with certain exceptions. 5 ILCS 120/2(a) (West 2014). Under one exception, a public body may hold a closed meeting to consider the evidence and testimony that was presented in an open meeting, "provided that the body prepares and makes available for public inspection a written decision setting forth its determinative reasoning." 5 ILCS 120/2(c)(4) (West 2014). Public bodies must take all final actions in open meetings. 5 ILCS 120/2(e) (West 2014).

¶ 23    Here, the ILRB held a public meeting to consider AFSCME's appeal of the Executive Director's recommended order. It voted at that meeting to adopt her decision in its entirety. However, ILRB members signed a written decision adopting her recommended dismissal order at a closed hearing. That decision sets forth the procedural history of the matter and states that the ILRB upholds the Executive Director's dismissal "for the reasons stated therein"; it does not include independent findings of fact or conclusions of law. Essentially the same procedure was followed in the Fourth District proceedings. There, however, the ILRB did not adopt all of the findings of the ALJ. Thus, presumably, the written decision signed by board members included a recitation of which findings it was adopting.

¶ 24    In the motion to dismiss AFSCME filed in the Fourth District, it cited two cases in which panels of the First District found that, at least in some circumstances, signing a final written decision at a closed meeting violates the Open Meetings Act even if it is done after a vote is taken at an open meeting. See *Baldermann*, 2015 IL App (1st) 140482, ¶ 37; *Howe*, 2013 IL App (1st) 122446, ¶¶ 25-26. Both panels held that the underlying administrative actions were not valid final decisions. *Baldermann*, 2015 IL App (1st) 140482, ¶ 39; *Howe*, 2013 IL App (1st) 122446, ¶ 32. We note that both cases involved additional procedural irregularities that supported the panels' decisions. *Baldermann*, 2015 IL App (1st) 140482, ¶¶ 35-36; *Howe*, 2013

IL App (1st) 122446, ¶ 32. However, the *Howe* court used broad language in holding "that the written decision must be prepared and provided to each board member at or before the time the Board votes to take a final action." *Howe*, 2013 IL App (1st) 122446, ¶ 25; see also *Baldermann*, 2015 IL App (1st) 140482, ¶ 37 (following *Howe* on this point). Both panels concluded that, as a result, they lacked jurisdiction to review the decisions. *Baldermann*, 2015 IL App (1st) 140482, ¶ 39; *Howe*, 2013 IL App (1st) 122446, ¶ 32.

¶ 25    As stated previously, AFSCME argued in the Fourth District that the ILRB ruling at issue was not a valid final administrative decision under *Baldermann* and *Howe*, thereby depriving the appellate court of jurisdiction to consider the appeal filed there by CMS. Accepting this argument and applying it to this case would mean that we do not have jurisdiction over this case either.

¶ 26    We need not determine whether the procedure followed in this case fully complied with the Open Meetings Act. For the reasons that follow, we find that, even assuming the proceedings did not fully comport with the Open Meetings Act's requirements, the ILRB's decision was a final administrative decision, and it was not inherently null and void.

¶ 27    The Open Meetings Act provides two alternative mechanisms for individuals to seek redress for violations (or anticipated violations) of its requirements. Any individual may file a petition in court, alleging that a public body has not complied with the requirements of the Open Meetings Act or that there is probable cause to believe a public body will hold proceedings that do not comply. 5 ILCS 120/3(a) (West 2014). The trial court has the discretion to "grant such relief as it deems appropriate." 5 ILCS 120/3(c) (West 2014). The court has the authority to declare "null and void any final action taken at a closed meeting in violation" of the Open Meetings Act. *Id.* However, that is not the only type of relief the court may grant. It can instead

11

grant an injunction barring future violations or order the public body to make the minutes of any closed meetings available to the public. *Id.* As an alternative, any individual seeking redress for a violation may file a request for review with a "Public Access Counselor," established as part of the office of the Attorney General. 5 ILCS 120/3.5(a) (West 2014). After review, the Attorney General must issue a binding opinion. If the Attorney General concludes that a violation has occurred, the opinion can direct the public body to take appropriate action. 5 ILCS 120/3.5(e) (West 2014).

¶ 28    As these procedures indicate, administrative actions taken in violation of the Open Meetings Act are ordinarily voidable; they are not automatically void. That is, a declaration that an action or decision is null and void is a remedy that must be requested and granted. Moreover, declaring an action or decision null and void is considered an "extreme remedy"; it is not a remedy that will be granted in all cases. See *People ex rel. Graf v. Village of Lake Bluff*, 321 Ill. App. 3d 897, 908 (2001), *rev'd on other grounds*, 206 Ill. 2d 541, 544 (2003).

¶ 29    Likewise, we do not believe that a failure to comply with the requirements of the Open Meetings Act will ordinarily prevent an administrative decision from being deemed "final." In this regard, we note that the circumstances before us are markedly different from those involved in *Howe* and *Baldermann*. As noted earlier, those cases involved multiple procedural flaws in addition to the fact that the final written orders were signed in closed meetings. In *Howe*, a member of a board considering an injured paramedic's application for duty disability benefits made a motion to grant the application, and the board voted against that motion. However, there was no indication that the board members ever actually voted on a motion to deny the application before issuing a written decision denying the benefits. *Howe*, 2013 IL App (1st) 122446, ¶¶ 13-14. In *Baldermann*, the agency's written decision did not include all of the findings it was

12

required to make. *Baldermann*, 2015 IL App (1st) 140482, ¶ 36. While these flaws may have justified finding that the administrative decisions at issue in those cases were not final decisions, we do not believe the same result is warranted here.

¶ 30 We express no opinion on whether the procedures followed in this case violated the Open Meetings Act. We also express no opinion on whether a declaration voiding the decision would be an appropriate remedy in the event that the ILRB's procedures were found to violate that Act. We conclude only that the decision of the ILRB constitutes a final administrative decision, which we have jurisdiction to review.

¶ 31 We next consider CMS's motion to remand this matter to the ILRB without first addressing the merits. CMS notes that AFSCME itself cannot challenge the validity of the decision under the Open Meetings Act because the 60-day time limit for doing so has passed. See 5 ILCS 120/3(a), 3.5 (West 2014). However, it points out that any individual may file a request for review with the Public Access Counselor within 60 days after discovering the violation of the Open Meetings Act as long as the individual does so within two years after the alleged violation occurred. 5 ILCS 120/3.5(a) (West 2014). Under this provision, CMS contends, any union members or member of the public who was not previously aware of the decision could file a request for review up until January 22, 2018. CMS further contends that if such a request is successful, the Attorney General could nullify the ILRB's January 2016 decision, which would make our decision in this case moot. We are not persuaded.

¶ 32 CMS's argument in favor of remand is based upon multiple layers of speculation. It requires us to assume that (1) some individual will file a request for review, (2) the Attorney General will find that a violation has occurred, and (3) the extreme remedy of declaring the

13

decision null and void will be imposed. Each of these possibilities is highly speculative. We decline to remand this matter to the ILRB on the basis of speculative possibilities.

¶ 33    We now turn our attention to the merits of AFSCME's petition for review. AFSCME argues that it presented sufficient evidence to warrant a hearing on both its claim that CMS committed an unfair labor practice under section 10(a)(4) of the Labor Relations Act by unilaterally changing a term of employment and its claim that CMS committed an unfair labor practice under section 10(a)(1) by threatening to require employees who go on strike for any part of a pay period to pay the employer's share of their health insurance premiums for the entire pay period. Both CMS and the ILRB argue that the ILRB properly exercised its discretion in reaching the opposite conclusions and that the FAQ posting was protected as free speech under section 10(c). CMS also argues that AFSCME forfeited its claims of section 10(a)(1) and section 10(a)(4) violations because it did not amend its charge to include those claims. We agree with AFSCME.

¶ 34    Our standard of review is informed by the fact that this matter was dismissed at the investigatory stage. Under the Labor Relations Act, when the ILRB receives an unfair labor charge, its first duty is to investigate the charge to determine whether a hearing is warranted. 5 ILCS 315/11(a) (West 2014); *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 44. At this stage, the role of the ILRB is similar to that of a grand jury—that is, it may call witnesses, assess their credibility, and draw reasonable inferences from the evidence in order to determine whether there is sufficient evidence to warrant a hearing. *Michels*, 2012 IL App (4th) 110612, ¶ 44. If the ILRB finds any issues of fact or law sufficient to require a hearing, it issues a complaint setting forth those issues. *Id.* The matter then proceeds to a hearing. 5 ILCS

14

315/11(a) (West 2014). If the ILRB does not find that the charge presents issues that warrant a hearing, it will dismiss the charge. *Michels*, 2012 IL App (4th) 110612, ¶ 44.

¶ 35     Where, as here, the ILRB dismisses an unfair labor charge because it finds insufficient evidence to warrant a hearing, we review its decision under the deferential abuse-of-discretion standard. *Id.* ¶ 45. We will find an abuse of discretion if the ILRB's decision is arbitrary, "exceed[s] the bounds of reason," or "ignore[s] recognized principles of law." *American Federation of State, County & Municipal Employees v. Schwartz*, 343 Ill. App. 3d 553, 559 (2003). As in all administrative review cases, the findings of fact supporting the dismissal order are considered *prima facie* true and correct, and we will not set them aside unless they are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

¶ 36     In assessing whether the ILRB ignored recognized principles of law, however, our review is somewhat less deferential. Although we generally accord deference to the ILRB's interpretation of the statutes it administers, we are not required to accept its interpretation. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345 (1989). We also note that, due to the parallels between section 10 of the Labor Relations Act (5 ILCS 315/10 (West 2014)) and section 8 of the National Labor Relations Act (29 U.S.C. § 158 (2012)), we may consider federal administrative and judicial circumstances interpreting the National Labor Relations Act. *City of Burbank*, 128 Ill. 2d at 345. With these principles in mind, we turn to the contentions of the parties.

¶ 37     We will first address CMS's forfeiture argument. CMS contends that AFSCME forfeited arguments on both its section 10(a)(1) and section 10(a)(4) claims because the charge was not amended to include these claims. We disagree.

¶ 38    The Labor Relations Act gives the ILRB, its members, and hearing officers appointed by the ILRB the discretion to amend an unfair labor complaint at any time before a final decision is issued. 5 ILCS 315/11(a) (West 2014). Such amendments may be made either on the motion of a party or *sua sponte*. *Forest Preserve District of Cook County v. Illinois Labor Relations Board*, 369 Ill. App. 3d 733, 746 (2006) (citing 80 Ill. Adm. Code 1220.50(f) (2003)). The complaint may be amended to add allegations not included in the original charge " 'so long as the added allegations are closely related to the original charge, or grew out of the same subject matter during the pendency of the case.' " *Id.* at 746-47 (quoting *Service Employees International Union, Local 73*, 20 PERI ¶ 85 (ILRB State Panel 2004)). The complaint may be amended to conform to evidence presented if the amendment would not cause prejudice to any party. *Id.* We note that the instant case was dismissed without a complaint being issued, but we believe the same principles apply to the ILRB's decision to consider all three issues.

¶ 39    In this case, we find that the allegations of all three claims are closely related to the allegations in the original charge and all three claims involve the same underlying set of circumstances. The charge cited both section 10(a)(1) and section 10(a)(2), but did not cite section 10(a)(4). Also, the charge did not specifically allege that the policy of requiring union members to pay the employer's share of their premiums for any entire pay period in which they go on strike constituted a unilateral change or that it acted as a threat against striking, although it did allege that the policy was posted online at a time when the parties were negotiating a new collective bargaining agreement and, as noted, the existence of the policy itself was a key part of all three claims.

¶ 40    We also find that CMS was not prejudiced by Executive Director Mlynski's decision to consider all three claims. As she noted in her recommended order, CMS had actual notice of the

claims. Significantly, CMS responded to all three arguments during the administrative proceedings.

¶ 41    We note that the authority cited by CMS in support of its forfeiture argument is distinguishable. See *Fraternal Order of Police, Chicago Lodge No. 7 v. Illinois Labor Relations Board*, 2011 IL App (1st) 103215, ¶¶ 27-30. There, the First District upheld the ILRB's finding that a union forfeited a claim. The union never asked for the complaint to be amended to include the claim, and its attorney objected to hearing testimony related to that claim, arguing that the testimony was not relevant because the claim was not at issue. *Id.* ¶¶ 29-30. The First District found that the union forfeited the claim by objecting to the testimony. *Id.* ¶ 30. We therefore reject CMS's forfeiture argument, and we find that the ILRB properly exercised its discretion in considering all three claims. We turn now to AFSCME's contentions.

¶ 42    We will next consider AFSCME's contention that the ILRB abused its discretion by dismissing the unfair labor charge because the charge raised a factual question concerning whether the policy described in the FAQ amounted to a unilateral change to a term or condition of employment during contract negotiations. We agree.

¶ 43    The applicable law is not in dispute. The Labor Relations Act requires public employers and unions to bargain collectively over the terms and conditions of employment. 5 ILCS 315/7 (West 2014). Refusal by either party to bargain in good faith constitutes an unfair labor practice. 5 ILCS 315/10(a)(4), (b)(4) (West 2014). An employer violates this requirement—and therefore commits an unfair labor practice—when it makes a unilateral change to a term or condition of employment that is the subject of collective bargaining while the parties are involved in contract negotiations. *Katz*, 369 U.S. at 743-47; *Vienna School District*, 162 Ill. App. 3d at 506. In this case, there is no dispute that health insurance is a term of employment that is covered under the

17

parties' collective bargaining agreements. The question is whether the policy described in the FAQ represents a change in policy that occurred during contract negotiations. More precisely, the question is whether the policy existed before it was posted on the website, which undisputedly occurred while the parties were negotiating a new contract.

¶ 44    On the record before us, there is little evidence on this question and no evidence that resolves the question. The record consists of the unfair labor charge, the parties' e-mail correspondence with the board member investigating the charge, CMS's letter responding to the charge, and the exhibits submitted by each party. AFSCME alleged that the policy was first communicated to it when the FAQ was posted in June 2015. CMS did not dispute this allegation. It alleged that the policy existed prior to being posted in the FAQ section of the website, regardless of whether AFSCME or its members were aware of the policy. CMS further alleged that the policy was previously followed during a strike by employees of Northeastern Illinois University, while AFSCME alleged that its research showed that the policy was *not* followed during that strike. Neither party provided any documentation to support its allegations concerning the 2004 strike.

¶ 45    The only documentary evidence in the record on this question is the chart of pay codes submitted by CMS and a section of the employee benefits handbook submitted by AFSCME. As noted earlier, the chart of pay codes shows that striking employees were previously responsible for paying 100% of their health insurance premiums *during* a strike. Significantly, however, the chart is silent as to any employee responsibility for health insurance premiums during the remainder of any pay period in which employees strike. The employee benefits handbook does not address the health insurance benefits of striking workers at all. Thus, the documentary evidence available does not conclusively answer the salient question.

18

¶ 46　We note that apparently Michael Provines, the board member who investigated the claim, did not find these documents conclusive either. As we discussed earlier, he asked CMS's attorney whether the pay code for striking workers applied only during the strike or for the remainder of the pay period. The question was necessary precisely because the answer could not be found in the available evidence. Counsel asserted in response that the code had always applied the entire pay period, even if a strike lasted only one day. However, the allegation of a party's attorney in an e-mail is not evidence. For these reasons, we believe the ILRB's finding that there was no question of fact to be resolved was against the manifest weight of the evidence.

¶ 47　We acknowledge that, as noted earlier, the ILRB has authority to hear the testimony of witnesses and make credibility determinations during the investigatory stage. See *Michels*, 2012 IL App (4th) 110612, ¶ 44. Here, however, no witnesses testified, neither party made allegations that were inherently implausible, and the limited documentary evidence available was inconclusive. Under these circumstances, there was nothing upon which a reasonable fact finder could base a credibility determination, and in fact, the administrative decision did not include any explicit credibility determinations. For these reasons, we believe it was arbitrary, and therefore unreasonable, to accord more credence to the allegations of CMS than those of AFSCME.

¶ 48　Finally, we acknowledge that AFSCME had the burden of demonstrating that there was enough evidence to warrant a hearing on this issue. However, it is difficult to prove a negative. Thus, expecting a union to be able to produce evidence of the nonexistence of an employer's policy not previously communicated to it without additional, more formal proceedings is likewise unreasonable. For these reasons, we find that the ILRB abused its discretion in failing to find that there is a question of fact to be resolved that warrants a hearing.

19

¶ 49    We next consider AFSCME's argument that the policy acts as a threat to dissuade employees from striking. AFSCME argues that the ILRB ignored recognized principles of law in concluding that the policy was not coercive and dismissing the claim. We agree.

¶ 50    Under section 10(a)(1) of the Labor Relations Act, it is an unfair labor practice for an employer "to interfere with, restrain[,] or coerce public employees in the exercise" of any right protected under the Labor Relations Act, including the right to strike. 5 ILCS 315/10(a)(1) (West 2014). An employer's message or conduct is "coercive" within the meaning of this provision if it " 'reasonably tends to coerce employees in the exercise of their rights, regardless of whether it does, in fact, coerce.' " *Chicago Transit Authority v. Illinois Labor Relations Board*, 386 Ill. App. 3d 556, 572-73 (2008) (quoting *National By-Products, Inc. v. National Labor Relations Board*, 931 F.2d 445, 451 (7th Cir. 1991)). The question is whether, in light of all of the surrounding circumstances, employees could reasonably conclude that their employer is threatening them with economic reprisal in the event of a strike. *National Labor Relations Board v. Brookwood Furniture*, 701 F.2d 452, 459 (5th Cir. 1983).

¶ 51    Here, the ILRB found that the policy at issue might dissuade employees from engaging in a strike. It found, however, that the policy was not coercive because it was similar to CMS's policy of not paying the salaries of striking employees during a strike, a policy which was not challenged by AFSCME. This conclusion overlooks a crucial distinction between the two policies—the policy concerning salaries is limited to the duration of the strike, while the policy concerning health insurance premiums is not. This difference is significant because an employer is not required to subsidize a strike. Thus, withholding wages and benefits *during* a strike generally does not constitute an unfair labor practice. See *In re General Electric Co.*, 80

20

N.L.R.B. 510, 511 (1948). The issue in this case is the denial of a benefit before and after a strike.

¶ 52    The National Labor Relations Board (NLRB) addressed a far more analogous situation in *In re Pride Ambulance Co.*, 356 N.L.R.B. 1023 (2011). There, an employer sent a notice to striking employees, informing them that it would stop paying its share of their health insurance premiums if they did not return to work. The notice further informed them that unless they returned to work or purchased coverage under COBRA, they would be subject to "re-enrollment requirements," including a 90-day waiting period during which they would have no coverage. *Id.* at 1024. The NLRB held that by threatening to impose the 90-day waiting period, the employer violated section 8(a)(1) of the National Labor Relations Act (29 U.S.C. § 158(a)(1) (2006)). *Pride Ambulance*, 356 N.L.R.B. at 1028. The NLRB noted that "decades of Board precedent" supported its holding. *Id.* at 1026. In particular, it pointed to its prior decision in *In re Cone Brothers Contracting Co.*, 158 N.L.R.B. 186 (1966). There, the NLRB explained that " 'strike activity does not entail acceptance after the strike of a smaller quantum of vested job rights and privileges.' " (Emphasis omitted.) *Pride Ambulance*, 356 N.L.R.B. at 1027 (quoting *Cone Brothers Contracting*, 158 N.L.R.B. at 188). It also looked to precedent in emphasizing that imposing a waiting period for health insurance coverage on employees who return from a strike " 'unjustly penalize[s] strikers' " for going on strike. *Id.* (quoting *In re Ace Tank & Heater Co.*, 167 N.L.R.B. 663, 664 (1967)). The NLRB thus concluded that withholding a benefit from employees who return to work after a strike is unlawful and threatening to do so constitutes an unfair labor practice under the federal counterpart of our section 10(a)(1). *Id.* at 1028.

¶ 53    Both CMS and the ILRB argue that *Pride Ambulance* and the cases cited therein are distinguishable from the instant case. CMS argues that those cases are distinguishable because

21

they involve the denial of "accrued benefits." See *In re Texaco, Inc.*, 285 N.L.R.B. 241, 245-46 (1987) (explaining the requirement of proof that a benefit is accrued on the date on which it is denied); but see *Conoco, Inc. v. National Labor Relations Board*, 740 F.2d 811, 814 n.2 (10th Cir. 1984) (noting that "It is not altogether clear whether accrual versus non-accrual of a benefit is the key to analyzing these cases."). CMS explains that health insurance benefits for State employees are not "accrued" because an employee is eligible for health insurance coverage the day he or she begins working for the State and ceases to be eligible the day the employee stops working for the State.

¶ 54    We reject the contention that this feature makes *Pride Ambulance* distinguishable for two reasons. First, the test for whether a benefit is "accrued" is simply whether it is "due and payable" at the time it is denied. *Conoco*, 740 F.2d at 815; *Texaco*, 285 N.L.R.B. at 245. Second, as the NLRB explained in *Pride Ambulance*, the distinction between accrued and nonaccrued benefits is relevant only where the employer is withholding a benefit or threatening to withhold benefits during a strike. *Pride Ambulance*, 356 N.L.R.B. at 1027.

¶ 55    Similarly, the ILRB argues that these cases are distinguishable because the policies in those cases were communicated in the context of ongoing labor disputes. We agree that this is a relevant factor in determining whether employees would reasonably feel coerced. See *Brookwood Furniture*, 701 F.2d at 460 (noting that statements found to be coercive were made "in the context of 'a vigorous *** antiunion campaign' "). We do not agree that this difference constitutes a bright line rule, however. Such a holding would absolve employers of otherwise-unlawful threats to withhold benefits from employees before or after a strike as long as they announce the policy at a time when a strike is not imminent. Such a result is untenable.

¶ 56    We acknowledge, however, that there are differences between the circumstances involved in *Pride Ambulance* and those involved in this case. The consequences of the reenrollment period at issue in *Pride Ambulance* were potentially dire. There, striking employees who returned to work after the strike were without coverage for a three-month period. A serious injury or illness during that period could have catastrophic consequences. Here, CMS would continue to maintain employees' insurance, but would bill them for the portion of the premiums it normally pays. In addition, as we have just discussed, the policy here was not announced in the midst of a labor dispute. All of these circumstances are relevant in assessing the coercive nature of the policy. See *Brookwood Furniture*, 701 F.2d at 459. Here, however, the ILRB did not assess the coercive tendency of the policy. Instead it found that announcing the policy could not be construed as a threat because it was no different from informing employees that they would not be paid during a strike. In short, the ILRB overlooked the distinction between informing employees that a benefit will be lawfully withheld during a strike and threatening to unlawfully withhold a benefit from employees before and after a strike. We find that by ignoring this distinction, the ILRB ignored a recognized principle of law.

¶ 57    Finally, we consider the argument of CMS and the ILRB that CMS's announcement of its policy was protected as free speech under section 10(c) of the Labor Relations Act (5 ILCS 315/10(c) (West 2014)). That section provides that it is not an unfair labor practice for an employer to express "any views, argument, or opinion" as long as "such expression contains no threat of reprisal or force or promise of benefit." *Id.* Typically, this provision and its federal counterpart are implicated when an employer or one of its agents expresses an opinion about the negative impacts the employer predicts might flow from unionization or a strike. See, *e.g.*, *National Labor Relations Board v. Gissel Packing Co.*, 395 U.S. 575, 616-19 (1969); *National*

23

*Labor Relations Board v. River Togs, Inc.*, 382 F.2d 198, 202 (2d Cir. 1967); *Metropolitan Alliance of Police, Chapter No. 357*, 27 PERI ¶ 9 (ILRB State Panel 2011). Here, CMS did not express any opinions. Rather, it announced its own policy, and AFSMCE has alleged that the policy itself acts as a threat against going on strike. If AFSCME ultimately prevails on its claim, section 10(c) will not provide a defense.

¶ 58　　For the foregoing reasons, we grant CMS's two motions to take judicial notice of other proceedings, we deny CMS's motion to remand this matter to the ILRB for another public vote on its existing decision, we reverse the order of the ILRB dismissing the unfair labor charge without a hearing, and we remand for further proceedings.

¶ 59　　Reversed and remanded.

2017 IL App (5th) 160046

NO. 5-16-0046
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, | ) ) ) | Petition for Review of an Order of the Illinois Labor Relations Board, |
|---|---|---|
| Petitioner, | ) ) | State Panel. |
| v. | ) ) | |
| THE ILLINOIS LABOR RELATIONS BOARD and THE STATE OF ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, | ) ) ) ) | No. S-CA-16-007 |
| Respondents. | ) | |

_____

**Opinion Filed:** **November 8, 2017**

_____

**Justices:**        Honorable Melissa A. Chapman, J.

                     Honorable Richard P. Goldenhersh, J., and
                     Honorable Judy L. Cates, J.,
                     Concur

_____

**Attorneys**        Stephen A. Yokich, George A. Luscombe III, Dowd, Bloch, Bennett,
**for**              Cervone, Auerbach & Yokich, 8 South Michigan Avenue, 19th Floor,
**Appellant**        Chicago, IL 60603

_____

**Attorneys**        Jeffrey S. Fowler, Lawrence Jay Weiner, Special Assistant Attorneys
**for**              General, Laner Muchin, Ltd., 515 North State Street, Suite 2800,
**Appellees**        Chicago IL 60654 (attorneys for Illinois Department of Central
                     Management Services); Lisa Madigan, Attorney General, State of
                     Illinois, David L. Franklin, Solicitor General, Frank H. Bieszczat,
                     Assistant Attorney General, 100 West Randolph Street, 12th Floor,
                     Chicago, IL 60601 (attorneys for Illinois Labor Relations Board)

_____